Shawn M. HOPSON, Plaintiff,

v.

DOLLAR BANK, Defendant.

No. Civ.A. 96–594.

United States District Court,
W.D. Pennsylvania.

Oct. 14, 1997.

Steven D. Irwin, Jeffrey B. Fienberg, Markel, Schafer & Goldman, Pittsburgh, PA, for plaintiff.

Hayes C. Stover, Kirkpatrick & Lockhart, Pittsburgh, PA, for defendant.

## OPINION and ORDER OF COURT

AMBROSE, District Judge.

Plaintiff Shawn M. Hopson ("Hopson"), initiated this action charging his former employer, Dollar Bank ("Dollar Bank"), with fifteen counts of racial and sexual discrimination. According to Hopson, Dollar Bank's failure to timely promote him, its constructive discharge of him, and its failure to rehire him, stemmed from sexually and racially discriminatory motives. Hopson seeks recovery under Title VII, 42 U.S.C. § 2000e–3, the Pennsylvania Human Relations Act, 43 Pa. Stat.Ann. § 951 et seq. ("the PHRA"), and 42 U.S.C. § 1981.

Pending is Defendant Dollar Bank's Motion for Summary Judgment (Docket No. 24). Dollar Bank seeks the dismissal of each of the fifteen counts. After careful consideration, and for the reasons set forth below, Defendant's Motion for Summary Judgment is granted in part and denied in part.

### STANDARD

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the court must examine the facts in a light most favorable to the nonmoving party. International Raw Materials Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir.1987.), cert. denied, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the nonmoving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial. Celotex, 477 U.S. at 322. Once the moving party satisfies this burden, the burden shifts to the nonmoving party, who must go beyond its pleadings and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories, showing that there is a genuine issue for trial. Id. at 324.

### FACTUAL BACKGROUND

Hopson, an African American, commenced his employment at Dollar Bank in 1986, as a Teleprocessing Coordinator in the Teleprocessing Department of the Data Processing Division. Hopson had certain managerial duties relating to analysts, and also had responsibility for certain equipment installations. Within less than two years, Hopson was promoted to Teleprocessing Manager. The promotion secured an increase in salary and a change in title, but did not alter his job responsibilities.

At both positions, Hopson reported to Vincent Tassone ("Tassone"), an Assistant Vice President of Data Processing. Tassone supervised a total of five departments, including Hopson's. Two men and two women (Joanne Ramsey and Debbie Simonson) man-

aged the remaining four departments. Tassone reported directly to Glen Roos, Vice President, who reported in turn to Jim Pratt, Director/Nice President in charge of the Data Processing Division. Subject to Roos' and Pratt's review, Tassone completed performance reviews, set salary levels and awarded promotions for his department heads.

In 1989, Simonson, who was employed as a Data Processing Manager for the MIS Department, received a salary of $28,947.75. Her position, in which she reported directly to Tassone, was equal In grade to that of Hopson's as Teleprocessing Manager. However Hopson received a salary of $25,335.18. In July of 1991, Simonson was promoted to Data Processing Officer, at Tassone's recommendation, and received a salary of $37,000.00.

Prior to Simonson's promotion, Hopson, who was making $33,071.98, inquired of Tassone about his likelihood of receiving a promotion to Officer. While Tassone initially told Hopson he was doing well, he later encouraged Hopson to make himself more "visible" to Pratt and Roos. Tassone pledged to take steps to ensure Hopson's increased visibility.

Hopson renewed his request in early 1991, after learning of Simonson's promotion. Tassone responded that promotion was an issue of "timing," and explained that he had no idea what qualities Pratt and Roos were looking for Hopson then asked Roos to explain officer selection. Roos reiterated Tassone's earlier statements about increasing visibility. Pratt, however, told Hopson that the decision to promote rested with Tassone, rather than with Pratt or Roos.

Shortly before his eventual promotion in February of 1993, Roos and Tassone informed Hopson of four areas needing improvement prior to receipt of a promotion. Hopson contends that this was the first time he had learned of these shortcomings, and that criticisms had never been disclosed in earlier performance reviews.

Approximately five months after receiving the promotion, Hopson tendered his resignation. Hopson claims that he was forced to resign as a result of racial and sexual discrimination. According to Hopson, Tassone had a long history of engaging in affairs with his direct female reports, including Simonson. As a result of the affairs, Tassone focused all of his managerial duties upon the report, and consequently neglected male reports, such as Hopson. Hopson avers that, at the time of his resignation, he believed that Tassone's behavior would continue unabated and that Hopson would never receive the same consideration as his female co-workers.

Hopson also charges Tassone with racial discrimination. According to Hopson, five or six years prior to his resignation, Tassone made a racial remark. During Hopson's interview of an African American prospective employee, Tassone made a remark that "[W]e don't want it to get too dark [in Hopson's department]." Hopson's department employed, at that time, three African Americans—more than any other department under Tassone's supervision.

Prior to resigning, Hopson encouraged one of his reports, Bonnie Kozak, to inform Human Resources that she had observed Tassone and Simonson engaged in a sexually compromising act, while at Dollar Bank. Upon Hopson's recommendation, Kozak reported the incident.

Tassone left Dollar Bank's employ shortly after Hopson's resignation. Upon learning of this, Hopson contacted Roos and stated that he wanted to return. Hopson indicated a willingness to return to his former job at the same salary. Hopson never premised his return upon being awarded Tassone's position. Roos told Hopson that he would "get back to him."

In mid-September, Hopson repeated his interest in returning to Dollar Bank. Roos advised Hopson to look elsewhere because Hopson's old position was being eliminated and Dollar Bank was looking to hire somebody with more skill in a particular area than Hopson had. Roos did not ask Hopson about his skill in this area. Finally, in January of 1994, Dollar Bank hired Jim Noel, a Caucasian, at a salary of $55,000, as a Telecommunications Manager, grade 34.

## ANALYSIS

Dollar Bank seeks the dismissal of each of Hopson's fifteen claims. The fifteen counts stem from three incidents: (1) a delayed promotion; (2) a constructive discharge; and (3) a failure to rehire. Hopson charges that Dollar Bank's sexually and racially discriminatory conduct was the impetus for each of the three events. I will address Dollar Bank's contentions with respect to each of the events, and the claims relating to each event, *seriatim*.

### I. Counts I—V—Failure to Promote Claim

Hopson asserts various claims based upon Dollar Bank's failure to timely promote him. In Counts I, II and III, Hopson alleges that Dollar Bank delayed his promotion for three years, based upon race discrimination, in violation of Title VII, 42 U.S.C. § 2000e, 42 U.S.C. § 1981, and § 955(a) of the PHRA. In Counts IV and V, Hopson claims that the delay in promotion was also occasioned due to sex discrimination, in violation of Title VII and the PHRA. I will refer to Counts I through V collectively as the "failure to promote" claims.

Dollar Bank contends that the claims set forth in Counts I through V are barred under either of two theories: (1) they are untimely; and (2) pleading deficiencies in both the administrative proceeding and in the Complaint preclude recovery.

### (A) Statutes of Limitations

■ Title VII requires that a claimant file a charge with the EEOC within 300 days of the allegedly discriminatory act. 42 U.S.C. § 2000e-5(e)(1). The PHRA provides for filing of charge of discrimination within 180 days of the discriminatory act. 43 Pa.Cons. Stat.Ann. § 959(h). Finally, under § 1981, a claim must be filed within two years of the discriminatory conduct. *See Al-Khazraji v. St. Francis College*, 784 F.2d 505, 511 (3d Cir.1986), *aff'd*, 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987); *see also* 42 Pa.Cons. Stat.Ann. § 5524.

■ The parties do not dispute that Hopson was ultimately promoted to Officer on February 1, 1993. Accordingly, any discrimination, be it sexually or racially based, must necessarily have occurred prior to February 1, 1993. Neither do the parties dispute that Hopson filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC") on April 29, 1994—more than one year after the allegedly discriminatory conduct could have occurred. Hopson did not commence this litigation until April 1, 1996—more than 3 years after his promotion. Given these undisputed facts, Dollar Bank contends that Hopson's failure to promote claims are barred by the applicable statutes of limitations. Construing the facts in a light most favorable to Hopson, it appears that he failed to timely file his failure to promote claims under a strict reading of any of the statutes.

While Hopson does not dispute this conclusion, he contends that his claims under the PHRA and Title VII for race and sex discrimination survive on the basis of the "continuing violation" doctrine. This theory allows a "plaintiff [to] pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant." *West v. Philadelphia Electric Co.*, 45 F.3d 744, 754 (3d Cir.1995) (citations omitted).

The United States Court of Appeals for the Third Circuit has cautioned that, "a court must be circumspect in relating discrete incidents to each other," and that "a district court must scrutinize the claims to establish that they are related." *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 484–85 (3d Cir.1997). "[T]o allow a stale claim to proceed," the Third Circuit court explained, "would be inconsistent with the administrative procedure established by Title VII which contemplates prompt filing of charges so that discrimination controversies may be resolved promptly." *Id.* at 485.

■ A proper invocation of the doctrine depends upon satisfying two requirements:

(1) the occurrence of at least one discriminatory act within the statute of limitations period; and

(2) the discrimination must be "more than the occurrence of Isolated or sporadic acts of Intentional discrimination"; that is, the acts must demonstrate a continuing pattern of discrimination.

*See West,* 45 F.3d at 755. There are several factors relevant to the determination of whether acts demonstrate a "continuing pattern of discrimination":

The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring ... or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is the degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

*Rush,* 113 F.3d at 482, quoting, *Berry v. Board of Supervisors,* 715 F.2d 971, 981 (5th Cir.1983) (footnote omitted).

In an effort to Invoke the doctrine, Hopson first argues that his constructive discharge claims based upon racial and sexual discrimination in violation of Title VII are timely. I agree, and therefore conclude that he has satisfied the first factor for application of the doctrine—establishing that at least one discriminatory act occurred during the statute of limitations period. Insofar as establishing the second prong—that the acts occurred as a part of a continuing pattern of discrimination, Hopson does not specifically address the discrete inquiries set forth in *Rush* and *Berry.* Hopson does argue that the failure to promote and the constructive discharge claims are based upon the same type of conduct—race and sex discrimination. Even were I to conclude that the acts do involve the same subject matter, I find that the

second and third inquiries, involving frequency and permanence, do not favor application of the doctrine.

Hopson does not allege that the acts occurred with any type of frequency. The record suggests that Hopson complains essentially of three acts over a seven year employment period: a failure to promote; a constructive discharge; and a failure to rehire. These actions appear to me to be isolated employment decisions, occurring over a lengthy period of time.

Finally, Hopson offers no argument with respect to the third, and "perhaps most important" factor—permanence. It would seem to me that a failure to promote has a sufficient degree of permanence so as to trigger Hopson's awareness of and duty to assert his rights. Significantly, Hopson does not claim that he was unaware of the discriminatory basis for the failure to promote, until some later date. Nor does he allege that he was only able to understand the discriminatory conduct after several other discriminatory actions were taken against him.

In light of the Third Circuit court's caution to be circumspect in applying the continuing violation theory and to closely scrutinize requests for application of the doctrine, and considering the three factors relevant to the determination of whether a plaintiff has demonstrated a continuing violation, I find that Hopson's failure to promote claims are not subject to the continuing violation doctrine. Consequently, Dollar Bank's Motion for Summary Judgment is granted, insofar as it seeks the dismissal of Counts I, II,[1] III, IV and V.

#### (B) *Pleading Deficiencies*

■ Dollar Bank argues, in the alternative, that Hopson's failure to clearly assert the application of the doctrine in the administrative proceeding and in the complaint is fatal. *See Miller v. Intern. Tel. & Tel. Corp.,* 755 F.2d 20, 25 (2nd Cir.1985.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122

---

**1.** Significantly, Hopson makes no mention of the doctrine with respect to his claim for race discrimination in the failure to promote under 42 U.S.C. § 1981. Because I have already determined, as stated above, that the § 1981 claim is untimely, Dollar Bank is entitled to summary judgment on this issue.

(1985) (stating that "... the commencement of the statute of limitations may be delayed until the last discriminatory act in furtherance of it ... provided that such a continuing violation is clearly asserted both in the EEOC filing and in the complaint") (citations omitted); *see also Brown v. City of New York,* 869 F.Supp. 158, 168 (S.D.N.Y.1994) (providing that "[t]o benefit from the continuing violation doctrine, a plaintiff must clearly assert the continuing violation both in the EEOC filing and in the complaint") (citations omitted); and *Watlington v. University of Puerto Rico,* 751 F.Supp. 318, 325 (D.Puerto Rico 1990) (disallowing a claim as time barred because the "theory of continuing violation must have been asserted both in the EEOC charge and in the complaint," and it was not so asserted). I agree with Dollar Bank's contentions. I have reviewed the administrative filing and the Complaint, and see no mention of the application of the continuing violation theory. Consequently, this failure serves as an independent basis for entering summary judgment in favor of Dollar Bank on Counts 1 through V.[2]

## II. Counts VI—X—Constructive Discharge Claims

Hopson also claims that Dollar Bank created an atmosphere of racial and sexual discrimination so intolerable that he had to resign. In Counts VI, VII and VIII, Hopson seeks to hold Dollar Bank liable for constructive discharge on the basis of race discrimination, in violation of Title VII, § 1981 and the PHRA. In Counts IX and X, Hopson similarly charges Dollar Bank with sex discrimination, In violation of Title VII and the PHRA.

Dollar Bank counters that the § 1981 claim for race discrimination, and the PHRA claims for both race and sex discrimination, are barred by the statute of limitations, and by pleading deficiencies. Dollar Bank also attacks the Title VII claims, but upon substantive grounds.

**2.** Given this disposition, I need not address Dollar Bank's other arguments in support of the

## (A). Counts VII, VIII, and X—PHRA and § 1981

### (i) Statute of Limitations

Dollar Bank argues that Hopson's claims for constructive discharge on the basis of sex and race discrimination in violation of § 1981 and the PHRA, are barred by the statute of limitations. As stated above, it is uncontested that Hopson resigned effective August 6, 1993. He filed a claim with the PHRA on April 29, 1994, and commenced this litigation on April 1, 1996. I would agree with Dollar Bank, therefore, that the § 1981 and PHRA claims were not filed within the respective two year and 180 day statute of limitations periods.

Hopson does not argue that the continuing violation doctrine gives new viability to his § 1981 claim. Because Hopson has failed to come forward with any evidence suggesting that genuine issues remain with respect to the timeliness of this claim, I find that Dollar Bank is entitled to the entry of summary judgment in its favor on Count VII.

■ Hopson does, however, argue for the application of the continuing violation doctrine with respect to his PHRA claims based upon race and sex discrimination. Hopson contends that, because the Title VII race and sex claims for constructive discharge are timely, and because the Title VII constructive discharge claims are related to the PHRA constructive discharge claims, the doctrine of continuing violation must apply.

I disagree. The continuing violation doctrine contemplates a relationship existing between *separate* events. The Title VII constructive discharge claims and the PHRA constructive discharge claims are based upon the *identical* event—Hopson's allegedly forced resignation. Thus, there is no relationship existing between separate events. Hopson should not be allowed to pursue his PHRA claim simply because Title VII allows for a more expansive limitations period.

Hopson has offered no other basis for the application of the continuing violation doc-

dismissal of the failure to promote claims.

trine in the context of his constructive discharge claims. Because I find no genuine issues of material fact to exist, Dollar Bank is entitled to summary judgment. Counts VIII and X are, therefore, also dismissed.

#### (ii) Pleading Deficiencies

As stated above, even were I to find that the continuing violation theory applied in this respect, Hopson's claims would still be deficient in that neither the administrative filing nor the Complaint clearly plead the continuing violation theory. This deficiency serves as an independent basis for the entry of summary judgment in favor of Dollar Bank with respect to Counts VII, VIII and X.

#### (B). *Counts VI and IX—Title VII*

Hopson also alleges that he was constructively discharged on the basis of race discrimination (Count VI) and sex discrimination (Count IX), in violation of Title VII.[3] To succeed on a constructive discharge claim, Hopson must show that Dollar Bank "knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subjected to them would resign." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir.1996), *quoting, Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 888 (3d Cir.1984). "Using an objective test to determine whether the employee was constructively discharged from employment, the Third Circuit asks whether 'the conduct complained of would have the foreseeable result that working conditions would be so unpleasant or difficult that a reasonable person in the employee's shoes would resign.' *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1079

(3d Cir.1992)." *Battaglio v. General Electric Company*, Civ. No. 94–4675, 1995 WL 11980 (E.D.Pa. Jan.5, 1995). An employee's subjective beliefs are not determinative. *Gray*, 957 F.2d at 1083.

Relying, in part, upon the decision rendered in *Clowes v. Allegheny Valley Hospital*, 991 F.2d 1159, 1161 (3d Cir.1993.), *cert. denied*, 510 U.S. 964, 114 S.Ct. 441, 126 L.Ed.2d 374 (1993), Dollar Bank contends that no reasonable person in Hopson's shoes would have resigned as a result of either the alleged sexual discrimination or the alleged racial discrimination. In *Clowes*, the United States Court of Appeals for the Third Circuit reversed the entry of judgment on a jury award for plaintiff in a constructive discharge claim, noting that the plaintiff was never: threatened with discharge; urged to resign; demoted; subjected to a reduction in pay; transferred to a less desirable position; given altered job responsibilities; or in receipt of unsatisfactory job reviews. The Third Circuit court found that "many of these factors [are] commonly cited by employees who claim to have been constructively discharged." *Clowes*, 991 F.2d at 1161.

It is undisputed that Hopson never experienced the situations identified by the Third Circuit court in *Clowes*, as common to those employees who claim to have been constructively discharged. There is nothing in the *Clowes* opinion, however, to suggest that an employee is precluded from recovering on a constructive discharge theory if he or she has not experienced one of the noted situations. Accordingly, contrary to Dollar Bank's urgings, I do not find the *Clowes* decision to be dispositive.[4]

---

**3.** I find it Important to note that, in his effort to survive summary judgment, Hopson does not delineate what behavior was sexually discriminatory and what behavior was racially discriminatory. Rather, he simply recites those incidents to which he took objection. I have, therefore, attempted to separate those incidents recited by Hopson, which suggest racial discrimination from those which suggest sexual discrimination, and will consider them separately when addressing each claim. Significantly, Hopson has not come forward with any case law standing for the proposition that a court must lump together incidents probative of racial and sexual discrimination in determining whether a plaintiff has established a *prima facie* case under each claim.

**4.** Dollar Bank also relies upon the *Clowes* decision for the proposition that, because Hopson "neither took any steps to alleviate the alleged unpleasant conditions nor complained about them" (Docket No. 23, p. 24), he is precluded from recovery. I do not agree that the *Clowes* decision supports this conclusion. While the *Clowes* court did note that a reasonable employee will usually explore alternatives before resigning, it was careful to qualify that "[w]e do not require that such steps be taken in all cases. An employee may be able to show working conditions were so intolerable that a reasonable employee would feel forced to resign without remaining on the job for the period necessary to take those steps." *Clowes*, 991 F.2d at 1161 n. 6.

#### (i) Race Discrimination

■ Nevertheless, I do hold that Dollar Bank is entitled to the entry of judgment in its favor on Hopson's claim for race discrimination alleged in Count VI. Hopson identifies only two alleged acts of discrimination based upon race, which ultimately lead to his resignation: (1) a comment by his supervisor in 1986 or 1988 that he did not want the department to get "too dark"; and (2) a delay in promotion prior to February of 1993.[5] Dollar Bank contends that a reasonable person would not have found these two incidents to have created such an intolerable atmosphere that resignation was necessary.

"A denial of a promotion, even if discriminatory, does not alone suffice to establish constructive discharge." *Ezold v. Block, Schorr and Solis–Cohen,* 751 F.Supp. 1175, 1192 (E.D.Pa.1990), *rev'd on other grounds,* 983 F.2d 509 (3d Cir.1993.), *cert. denied,* 510 U.S. 826, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993). Rather, a denial of a promotion must be accompanied by other factors which, when viewed together, would cause a reasonable person to believe that the employment condition was so intolerable that he or she would have to resign.

The only other "factor" offered by Hopson is Tassone's alleged remark. I agree with Hopson that the "too dark" comment is certainly susceptible of a racially discriminatory interpretation. Yet, the comment was made at least five years before Hopson resigned. Hopson has not come forward with any evidence that Tassone, or others at Dollar Bank, made other racially discriminatory comments, or otherwise acted in a racially hostile manner.

It is simply too difficult to believe that Hopson, much less a reasonable person, would have stewed over the "too dark" comment for at least a five year period, then resigned five months after receiving a promotion, based upon these two incidents. Because I do not believe that reasonable persons could differ with respect to this conclusion, Dollar Bank is entitled to the entry of summary judgment in its favor on Count VI.

#### (ii) Sex Discrimination

■ In contrast, I find that genuine issues of material fact do exist over whether the sexual discrimination was of such an intolerable nature that a reasonable person in Hopson's shoes may have resigned. Dollar Bank argues that, because Tassone was relieved of his supervision over Simonson (the direct report with whom he was allegedly having an affair) on June 1, 1993, Hopson's fear of sexual discrimination after that date would be baseless. I disagree. The facts suggest that Tassone had a long history of involvement with his female reports—i.e., Caroline Janovec, Brenda Maynard Murphy, Joanne Ramsey, and Debbie Simonson. Given this history, reasonable persons could accept Hopson's concern that Tassone would simply begin pursuit of another female at Dollar Bank, and would therefore have continued to discriminate against Hopson. Because I find that reasonable persons could return a verdict in favor of Hopson, Dollar Bank's Motion for Summary Judgment is denied, insofar as it seeks the dismissal of Count IX.[6]

---

**5.** Hopson also claims that his supervisor was "arrogant" and acted In a condescending manner. The supervisor "thought he was, you know, God's gift to whatever." Hopson Dep., p. 93. I do not, however, find this allegation to be probative of either a racial or sexual discrimination. Hopson has not alleged that the arrogance or condescension was directed solely at African Americans, or males, or even him. Absent some connection to *discriminatory* behavior, this particular personality predilection does not merit discussion.

**6.** Dollar Bank makes a passing reference to the decision rendered in *Miller v. Aluminum Company of America,* 679 F.Supp. 495 (W.D.Pa.1988), *aff'd,* 856 F.2d 184 (1988). To the extent that

Dollar Bank intended to argue that the *Miller* decision precludes recovery in this instance, I find the case to be distinguishable. In *Miller,* a female employee charged her employer with sex discrimination, based upon the fact that a female co-worker was having an affair with their supervisor. The district court stated that the affair placed both males and females alike at a disadvantage, and thus discrimination could not exist on the basis of sex. Here, however, Hopson has adduced evidence that Tassone engaged In a *pattern of having affairs with his female reports,* and of taking steps to ensure their promotions, while at the same time ignoring his male reports. Indeed, of the five departments which Tassone supervised, Tassone had relationships with the

*III. Counts XI—XV—Failure to Rehire Claims*

Counts XI through XV purport to set forth claims based upon a "failure to rehire."[7] Dollar Bank challenges each of Hopson's claims in this regard. With respect to the claim of race discrimination under § 1981 set forth in Count XII, Dollar Bank again contends that the statute of limitations bars recovery. In response to the averments contained in Counts XIV and XV, that the decision not to rehire Hopson constituted unlawful retaliation under Title VII and the PHRA, Dollar Bank alleges that Hopson's failure to engage in a "protected activity" precludes recovery. Finally, with respect to the claims of race discrimination asserted in Counts XI and XIII, Dollar Bank avers that the record is devoid of any evidence showing that its decision to not rehire Hopson on the basis of a reorganization of the department, was pretext for race discrimination. I will address each contention *seriatim.*

*(A). Count XII—42 U.S.C. § 1981*

As stated above, § 1981 claims are subject to a two-year statute of limitations. It is undisputed that Hopson did not commence this action until April 1, 1996. The Complaint filed with the PHRC indicates that Hopson became aware, in January of 1994, that James Noel had been hired for the position which Hopson sought. The undisputed facts thus indicate that Hopson delayed more than two years after learning of the alleged discrimination, in filing this action.

Significantly, Hopson does not dispute this conclusion, nor does he argue for any tolling of the statutory period. Consequently, I find that Hopson is barred from recovering under Count XII on the basis that his claim is untimely. Dollar Bank's Motion for Summary Judgment is therefore granted, insofar as it seeks the dismissal of Count XII.

*(B). Counts XIV and XV—Sex Discrimination*

In Counts XIV and XV, Hopson contends that Dollar Bank retaliated against him due to Hopson's encouragement of a co-worker's reporting of Tassone's involvement with Simonson. According to Hopson, Dollar Bank's retaliation manifested itself in its failure to rehire Hopson, in violation of Title VII and the PHRA.

Title VII prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in an investigation ... under this subchapter." 42 U.S.C. § 2000e–3(a). Similarly, the PHRA declares it to be unlawful for an employer "to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge ... under this act." 43 Pa.Cons.Stat.Ann. § 955(d).

"The allocation of the burden of proof for both the federal and state retaliation claims follows the familiar Title VII standards." *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920 (3d Cir.1997). The standards differ depending upon whether the plaintiff intends to prove his case via the "pretext" or "mixed motives" theory. Because the record does not reveal any direct evidence of discrimination, as would be necessary in a "mixed motives" case, I presume that Hopson is proceeding under a "pretext" theory.

The standard of proof under a pretext case is set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a *prima facie* case of retaliation under *McDonnell Douglas,* Hopson must show that:

(1) he was engaged in a protected activity;

---

only two female department heads (Ramsey and Simonson). Tassone's conduct, therefore, placed only the male reports at a distinct disadvantage, which reasonable persons could find to be discrimination based upon sex.

**7.** Count XI sets forth a claim under Title VII for race discrimination; Count XII sets forth a claim

under § 1981 for race discrimination; Count XIII sets forth a claim under the PHRA for race discrimination; Count XIV sets forth a claim under Title VII for sex discrimination; and Count XV sets forth a claim under the PHRA for sex discrimination.

(2) his employer took adverse action against him; and

(3) a causal link exists between the protected activity and the employer's adverse action.

*Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir.1997) (citations omitted). If Hopson establishes a *prima facie* case, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action." *Harley v. McCoach*, 928 F.Supp. 533, 541 (E.D.Pa. 1996). If Dollar Bank discharges this burden, "[t]he burden then shifts back to the plaintiff to show by a preponderance of the evidence that the reasons offered by the employer are unworthy of credence and are a pretext for discrimination." *Id.*

 Dollar Bank challenges Hopson's allegations that he engaged in a "protected activity." "Protesting what an employee believes in good faith to be a discriminatory practice is clearly protected conduct." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir.1996) (citations omitted). Thus, a plaintiff must prove that "'he was acting under a good faith belief that a violation existed.'" *Griffiths v. CIGNA Corp.*, 988 F.2d 457, 468 (3d Cir.1993) (citations omitted), *overruled on other grounds, Miller v. CIGNA Corp.*, 47 F.3d 586, 596 (3d Cir.1995).

I agree with Dollar Bank that Hopson has failed to satisfy this threshold requirement. Hopson avers that "[t]he undisputed evidence of record indicates that Hopson urged Kozak to inform Human Resources that Tassone and Simonson were caught in a sexually compromising position on bank property and that Tassone's and Simonson's conduct is a violation of Dollar's hostile environment sex discrimination policy." (Docket No. 25, p. 24). Hopson concludes, therefore, that he "did not merely exert a good faith belief that he was assisting Kozak to report what he thought was protected activity; rather, Hopson assisted Kozak in informing Human Resources that she was the victim of sexual discrimination." *Id.*, p. 24–25.

Hopson's claim is fatally deficient. Simply stated, the record is devoid of any indication of what his "good faith belief" was at the time he counseled Kozak to report the incident. For instance, Hopson has not testified that he believed, in the Spring or Summer of 1993, that Tassone's affair violated Dollar Bank policy. More importantly, Hopson did not state that he believed, at that time, that a consensual affair between co-workers violated the dictates of Title VII and/or the PHRA.

While Hopson alleges, in his Brief, that Kozak had been the victim of sexual discrimination, the record does not support the notion that Hopson believed that Kozak had even been discriminated against, much less discriminated against on the basis of her sex. The record supports, at most, a conclusion that Hopson had a good faith belief that Kozak's knowledge *might* subject her to *future* adverse consequences. Kozak testified that Hopson told her that Tassone "might well retaliate against [her, after she reported his affair to Human Resources] and that he and Wayne would not be able to protect [Kozak] ... because they would no longer be employed by the bank." Kozak Affidavit, ¶ 16. In recounting his conversation with Kozak, Hopson stated that:

I said, you know, "Just be careful of how you deal with him." I said, you know, "He may decide that he want to retaliate for what you saw or what you witnessed," and I think she was a little concerned, and what I did is I gave her a point of reference. I said, "Well, there was another young lady that worked in the company, worked in my department when I first started, that she had a lawsuit against Vince or the bank, and Vince wanted to retaliate with her, and he wanted me—or he let it be known to me that he wanted her out there." I said, "So I'm just letting you know to be careful and to take care of yourself because you have no one to take care and protect you now that Wayne and myself is done."

*See* Hopson Dep., pp. 87–88. The fact that Hopson anticipated that Tassone might take adverse action with respect to Kozak at some time in the future does not, however, translate into a good faith belief that Tassone had *already* engaged in some type of discriminatory conduct.

Because Hopson has failed to satisfy this threshold requirement, the claim must be dismissed. Dollar Bank's Motion for Summary Judgment is, therefore, granted insofar as it seeks the dismissal of Counts XIV and XV. Given this disposition, I need not address Dollar Bank's other arguments in support of dismissal.

### (C) Counts XI and XIII—Race Discrimination

Finally, Dollar Bank challenges Hopson's claims asserted in Counts XI and XIII for race discrimination, in violation of Title VII and the PHRA. Hopson contends that he "applied for a position at Dollar Bank as a Data Processing Officer on August 19, 1993, a position which he was qualified to fill," and that, after rejecting Hopson's candidacy, Dollar Bank ultimately hired Jim Noel, a Caucasian, who had not previously been employed by Dollar Bank. *See* Amended Complaint, ¶¶ 121–126. Hopson further alleges that Dollar Bank had routinely rehired Caucasian employees.

█ Dollar Bank does not dispute that Hopson has established a *prima facie* case of race discrimination under the *McDonnell Douglas* standard articulated above. *See* Docket No. 23, p. 16. As such, the burden shifts to Dollar Bank to articulate a legitimate, nondiscriminatory reason for not rehiring Hopson. Dollar Bank contends that Hopson's former position was eliminated as a result of a reorganization process. Hopson's and Tassone's responsibilities were collapsed into one position. *See* Pratt Dep., Vol. II, p. 48; and Roos Dep., Vol. II, p. 23.

The burden consequently shifts back to Hopson to demonstrate that the articulated reason is a mere pretext for discrimination. Hopson claims that pretext is evident in that the reorganization of the department occurred on paper only, and that the alleged reorganization occurred only *after* Hopson communicated his interest in returning. As to the latter allegation, the record supports Hopson's contentions that the reorganization was purportedly accomplished in mid-September, after he expressed a desire to return. As to the former allegation, Hopson identifies evidence in the record suggesting that certain of Tassone's responsibilities were shifted to other positions, and were not incorporated in to the new "collapsed" position. *See* Pratt Dep., Vol. II, pp. 37, 45–46 (i.e., Ramsey no longer reported to Tassone's former position; and budget responsibilities were eliminated from Tassone's old job, as were management responsibilities for the liaison department). The new position, Hopson reasons, only incorporated his old job responsibilities.

Finally, Hopson has come forward with evidence that Caucasian employees who left Dollar Bank's employ, were rehired several months later. For instance, both Wayne Pogany, who had reported to Hopson, and Dave Yoho, were both rehired at Dollar Bank. *See* Hopson Dep., pp. 17–19.

I believe that a jury could reasonably find, when considering this evidence in full context, that Dollar Bank's explanation for not rehiring Hopson is mere pretext. Accordingly, Counts XI and XIII do not merit dismissal, and Dollar Bank's Motion for Summary Judgment is denied in this regard.[8]

---

8. Dollar Bank devotes substantial effort to the argument that Noel was more qualified for the new position than was Hopson. However I need not consider this contention because Hopson has based his claim upon failure to rehire him for his old position. A comparison of the candidates' respective credentials is not necessary. To the extent that Dollar Bank's analysis is intended to rest upon the notion that, even if the "new position" was one on paper only, and that Noel was, in fact, hired to fill Hopson's old position, I find that Tassone's statement that Noel and Hopson were comparably qualified (*see* Tassone Dep., p. 200), precludes the entry of summary judgment.