**Linda HARLEY, Plaintiff,**

**v.**

**CANEEL BAY, INC., Defendant.**

**No. Civ.1999–137.**

District Court, Virgin Islands,
D. St. Thomas and St. John.

March 22, 2002.

---

Archie Jennings, St. Thomas, U.S.V.I., for plaintiff.

David J. Comeaux, Charles E. Engeman, St. Thomas, U.S.V.I., for defendant.

## MEMORANDUM

MOORE, District Judge.

In 1995, Caneel Bay, Inc. ["Caneel Bay" or "defendant"], a resort in St. John, U.S. Virgin Islands, hired Linda Harley ["Harley" or "plaintiff"] as part of its groundskeeping department to take care of the plants in its nursery and to assist with other areas at the resort as needed. In May 1997, Caneel Bay hired Oriel Smith ["Smith"] as superintendent of the grounds. Shortly after his arrival, Smith met with Harley to discuss his concerns with her performance. In particular, he expressed concern "with the gross neglect of the plants in the nursery." (Def.'s Mem.Supp.Mot.Summ.J., Ex. G.) At the same time, Smith presented Harley with a memorandum outlining his concerns, but she refused to sign the memorandum, believing Smith's concerns to be unfounded. (Id., Ex. H.) In Harley's view, Smith was unresponsive to her suggestions and "totally disrespectful" of her. (Id., Harley Dep. at 18, 51.)[1] In March of 1998, Smith gave Harley a written warning outlining several problems he and the grounds department experienced with her during the previous year, including, *inter alia,* her continued neglect of the resort's plants, episodes of unauthorized leave, and general unproductivity. (Def.'s Mem.Supp. Summ.J., Ex. I.) In response to Smith's warning, Harley submitted a nine-page, handwritten letter detailing her own problems with Smith. (Id., Ex. H.) That same day, she submitted her resignation due to the "continual harrassment [sic] and abuse by Ariel Smith," which made her job "totally intolerable." (Id., Ex. J.)

On August 16, 1998, Harley brought this action alleging claims of gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2 (Count I), wrongful discharge in violation of the Virgin Islands Wrongful Discharge Act, V.I.Code Ann. tit. 24, §§ 71–76 ["WDA"] (Count III), and breach of contract (Count II).[2] In February 2000, Caneel Bay moved to dismiss Harley's WDA claim under Federal Rule of Civil Procedure 12(b)(6), and subsequently filed an unopposed motion for summary judgment on her Title VII and breach of contract claims. Both motions are before the Court.

## I. JURISDICTION AND LEGAL STANDARDS

This Court has jurisdiction over the federal question pursuant to section 22(a) of the Revised Organic Act of 1954[3] and 28

---

1. Apparently, Harley had suggestions on a number of Smith's decisions, ranging from his choice of fertilizer and pest control program to his organizational skills. (Harley Dep. at 51.)

2. Although the plaintiff refers to the Age Discrimination in Employment Act, 29 U.S.C. § 691, in the first paragraph of her complaint, and further sets forth facts that would seem to relate to a claim for violation of that Act, the plaintiff does not specifically allege age discrimination in any count. Moreover, the parties have not referred to age discrimination in any subsequent pleadings. I find that the plaintiff has abandoned any claim based on age discrimination. (Def.'s Mem. Supp.Mot.Summ.J., Harley Dep. at 17.)

3. 48 U.S.C. § 1612(a). The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541–1645 (1995 & Supp.2001), *reprinted*

U.S.C. § 1331. Supplemental jurisdiction over the territorial claims arises under 28 U.S.C. § 1367.

In considering Caneel Bay's 12(b)(6) motion to dismiss the WDA claim, the Court may dismiss the claim "if it appears certain the plaintiff cannot prove any set of facts in support of [her claim] which would entitle [her] to relief." *See Bostic v. AT & T of the Virgin Islands,* 166 F.Supp.2d 350, 354 (D.Vi.2001) (internal quotations omitted); *see also* FED.R.CIV.P. 12(b)(6). At the Rule 12(b)(6) stage, the Court must accept as true all well-pled factual allegations, drawing all reasonable inferences in the plaintiff's favor. *See Bostic,* 166 F.Supp.2d at 354.

The Court must grant Caneel Bay's motion for summary judgment on Harley's other claims if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue respecting any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Sharpe v. West Indian Co.,* 118 F.Supp.2d 646, 648 (D.Vi.2000). The non-moving party may not rest on mere allegations or denials, but must establish by specific facts that there is a genuine issue for trial from which a reasonable juror could find for the nonmovant. *See Saldana v. Kmart Corp.,* 84 F.Supp.2d 629, 631–32 (D.Vi.1999), *aff'd in part and rev'd in part,* 260 F.3d 228 (3d Cir.2001). Only evidence admissible at trial shall be considered and the Court must draw all reasonable inferences therefrom in favor of the nonmovant. *See id.* For reasons that will become clear below, the Court will first consider Harley's motion for summary judgment.

*in* V.I.CODE ANN. 73–177, Historical Documents, Organic Acts, and U.S. Constitution

## II. TITLE VII

### A. Prima Facie Case and Burden of Proof

As I recently discussed in *Rajbahadoorsingh v. Chase Manhattan Bank,* 168 F.Supp.2d 496 (D.Vi.2001) and *Hazell v. Executive Airlines,* 181 F.Supp.2d 444 (D.Vi.2002), the Supreme Court of the United States has established a three-prong test for the viability of a discrimination suit brought pursuant to Title VII. First, the plaintiff "must carry the initial burden under the statute establishing a prima facie case of [unlawful] discrimination." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To accomplish this, the plaintiff must show that: (1) he is part of a protected class; (2) he was qualified for his position; (3) despite these qualifications, he was terminated; and (4) he was replaced by a member of a non-protected class or "someone in a non-protected class, otherwise similarly situated, was treated more favorably." *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. 1817, 93 S.Ct. 1817; *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994); *Hicks v. Arthur,* 878 F.Supp. 737, 738 (E.D.Pa.1995), *aff'd,* 72 F.3d 122 (3d Cir.1995). Under this first prong, "[e]stablishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089.

Once the plaintiff establishes this presumption, the burden of production shifts to the defendant to "articulate some legiti-

(1995 & Supp.2001) (preceding V.I.CODE ANN. tit. 1).

mate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817. Under this second prong, the employer has the burden of producing rebuttal evidence. *See Hicks*, 509 U.S. at 506–07, 113 S.Ct. 2742; *see also Burdine*, 450 U.S. at 255, 255 n. 9, 101 S.Ct. 1089 (noting that such evidence must be admissible). The employer can satisfy this burden "by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes*, 32 F.3d at 763 (citing *Hicks*, 509 U.S. at 507, 113 S.Ct. 2742). This second prong does not require the employer to prove "that it was actually motivated by the proffered reasons. It is sufficient if the [employer's] evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. Even though the burden of production shifts to the defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253, 101 S.Ct. 1089.

Finally, once the defendant has offered a legitimate, nondiscriminatory reason for its actions, the burden of production under the third and final prong shifts back to the plaintiff to show, by a preponderance of the evidence, that the proffered reason is pretextual. *See id.* at 256, 101 S.Ct. 1089. To satisfy this burden, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764 (citing *Hicks*, 509 U.S. at 511, 113 S.Ct. 2742).

## B. Harley's Title VII Claim

I will grant the defendant's motion for summary judgment because Harley's Title VII claim fails to establish a prima facie claim of employment discrimination. In particular, Harley can neither prove that any similarly situated male employees were treated more favorably nor establish that she was constructively discharged.

■ First of all, Harley's attempt to establish her prima facie case fails on account of her inability to prove that her resignation amounted to a constructive discharge. Harley's complaint focuses solely on the "harsh" treatment by one supervisor, Smith. The Third Circuit Court of Appeals has warned that discrimination statutes should not be "used as a means of thwarting an employer's nondiscriminatory efforts to insist on higher standards." *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1162 (3d Cir.1993). *But see id.* (noting that an employer's use of unreasonably high standards may constitute constructive discharge). The evidence is clear that Smith was a demanding supervisor. (Titre Dep. at 32–33 (stating that Smith was a hard person to work for).) There is, however, no evidence that Smith's standards were unreasonable. It also bears noting that there is no evidence that Harley ever sought alternative means to alleviate her problems, such as seeking a transfer to another position. *See Clowes*, 991 F.2d at 1162 (stating that "a reasonable employee will usually explore ... alternative avenues before coming to the conclusion that resignation is the only option") (citations omitted). Accordingly, there is no basis for me to find that the working conditions at Caneel Bay were "so unpleasant or difficult that a reasonable person in the employee's shoes would resign." *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1079 (3d Cir.1992). Therefore,

Harley's resignation does not rise to the level of constructive discharge.

■ Even if Harley's resignation did, in fact, constitute a constructive discharge, her prima facie case would still fail because she is unable to demonstrate that any similarly situated employees were treated more favorably. Although Harley argues that both Raymond Doway and Berton Scatliffe were similarly situated, I can consider neither individual similarly situated as both were her supervisors. *See Hazell v. Executive Airlines*, 181 F.Supp.2d 444, 450 (D.Vi.2002) (citing *Osuala v. Community Coll. of Philadelphia*, Civ. No. 00-98, 2000 U.S.Dist. LEXIS 11609 *21, 2000 WL 1146623 *7 (E.D.Pa. Aug.15, 2000), *aff'd*, 259 F.3d 717 (3d Cir.), *cert. denied*, — U.S. —, 122 S.Ct. 219, 151 L.Ed.2d 156 (2001)). The fellow male co-workers Harley also points to as similarly situated cannot be considered as such because there is no evidence that any of them had the same history of performance deficiencies. *See id.; see also Simpson v. Kay Jewelers*, 142 F.3d 639, 647 (3d Cir.1998) (noting that "the focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action"); *Bullock v. Children's Hosp. of Philadelphia*, 71 F.Supp.2d 482, 489 (E.D.Pa.1999) ("To be deemed similarly situated, the individuals with whom a plaintiff seeks to be compared must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."). Moreover, as noted above, Smith demanded the same high standards of all his employees. (Titre Dep. 32–33.) Accordingly, plaintiff has not established the last requirement of the first prong of the *McDonnell–Burdine–Hicks* test, namely, that she was replaced by a member of a non-protected class or that "someone in a non-protected class, otherwise similarly situated, was treated more favorably."

Therefore, as Harley has failed to establish a prima facie case of discrimination under the *McDonnell–Burdine–Hicks* test, I will grant defendants' motion for summary judgment on plaintiff's Title VII claim.

## III. VIRGIN ISLANDS WRONGFUL DISCHARGE ACT

As noted above, the defendant also moved to dismiss the plaintiff's wrongful discharge claim brought pursuant to Virgin Islands law, arguing, *inter alia*, that claims of constructive discharge are not cognizable under the WDA.[4] For the reasons stated below, I conclude that constructive discharge is cognizable under the

---

4. In its original motion to dismiss, the defendant also asserted that the WDA is preempted by federal law, citing *Bell v. Chase Manhattan Bank*, 40 F.Supp.2d 307 (D.Vi.1999) and *St. Thomas–St. John Hotel & Tourism Assoc., Inc. v. Government of the Virgin Islands*, 41 V.I. 317, 1999 WL 376873 (D.V.I.1999). Soon after the defendant's motion was filed, the Court of Appeals for the Third Circuit held that the WDA is not, as a general proposition, preempted by federal law. *See St. Thomas–St. John Hotel & Tourism v. Government of the Virgin Islands*, 218 F.3d 232 (3d Cir.2000). Left open was the question whether the application of the WDA to supervisors is preempted by federal labor law. *See id.* at 246. On remand, this Court ordered additional briefs and has not yet ruled on that issue. On February 1, 2001, the Virgin Islands Legislature amended the definition of a covered "employee" under the WDA so that it does not include "any individual employed in a bonafide position in an executive or professional capacity." 24 V.I.C. § 62 (as amended by No. 6391, § 3(b)(4)). The defendant in this action maintains its original argument that the WDA as it might have applied to supervisors in August 1998 was preempted by federal labor law. Because I will dismiss the plaintiff's WDA claim for other reasons, I do not reach this issue here.

WDA. Although under ordinary circumstances, this holding would require that I deny the defendant's Rule 12(b)(6) motion, I conclude that Harley's WDA claim must also be dismissed, given the undisputed facts as developed regarding the circumstances surrounding Harley's resignation.

## A. Constructive Discharge Is Cognizable Under the WDA

### 1. The Statutory Language Does Not Preclude Claims of Constructive Discharge

In deciding whether the WDA applies to claims of constructive discharge, I must first look to the language of the statute itself. *See Hess Oil V.I. Corp. v. Richardson,* 894 F.Supp. 211, 215 (D.V.I.App.Div.1995). In doing so, I "presume that the legislature expresses its legislative intent through the ordinary meaning of the words it chooses to use, and if the statutory language is clear, it is not necessary to look for congressional intent from legislative history." *Id.,* 894 F.Supp. at 215–16.

Section 76(c) states: "Any employee discharged for reasons other than those stated in subsection (a) of this section shall be considered to have been wrongfully discharged...." 24 V.I.C. § 76(c). In employment law generally, the term "discharge" ordinarily encompasses the concept of constructive discharge, and there is nothing in the way the term is used in the WDA to indicate that it is used in any but the ordinary sense. *See, e.g., Clowes v. Allegheny Valley Hosp.,* 991 F.2d 1159, 1161 (3d Cir.1993) (applying doctrine of constructive discharge to claim brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 691); *Goss v. Exxon Office Sys. Co.,* 747 F.2d 885, 887 (3d Cir.1984) (noting the "universal recognition among the courts of appeals" on the application of the doctrine of constructive discharge to Title VII cases); *J.P. Stevens & Co. v. NLRB,* 461 F.2d 490, 494 (4th Cir.1972) (applying the doctrine of constructive discharge in an action brought pursuant to section 8(a) of the National Labor Relations Act, 29 U.S.C. § 158(a)); *Highhouse v. Avery Transp.,* 443 Pa.Super. 120, 660 A.2d 1374, 1376 (1995) (applying the doctrine of constructive discharge to a common-law tort claim of wrongful discharge in violation of public policy); *No. 1 Cochran v. Unemployment Comp. Bd. of Review,* 135 Pa.Cmwlth. 252, 579 A.2d 1386, 1390 (1990) (applying doctrine of constructive discharge in unemployment compensation litigation); *see also, e.g.,* MONT.CODE ANN. § 39–2–903(2) (specifying that constructive discharge is included in the definition of "discharge" for purposes of Montana's wrongful discharge act). Moreover, construing the term "discharge" in its ordinary sense to include constructive discharge furthers the WDA's purpose of protecting employees from the loss of their jobs for reasons other than the nine permissible grounds enumerated therein. To read the unambiguous words otherwise would allow an employer to avoid the intended consequences of the statute simply by creating an atmosphere so intolerable that a reasonable person would feel compelled to resign.

Accordingly, discrimination claims for constructive discharge are cognizable under the WDA. The plaintiff must allege a good faith claim of constructive discharge, namely, that she resigned because her employer made her working conditions so unpleasant or difficult that she was forced to resign. To succeed on the merits of a claim of constructive discharge, she must establish that the working conditions were so difficult or unpleasant that a reasonable person in the employee's shoes would feel compelled to resign.

The standard adopted here for discrimination claims is often referred to as the "objective standard" for constructive discharge. This standard does not require any showing of specific intent on the part of the employer to make conditions intolerable. *Accord Goss,* 747 F.2d at 888 (expressly adopting the general rule that constructive discharge is cognizable under Title VII, and further adopting the objective test for finding constructive discharge, which requires that a court "merely find that the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign").[5]

## 2. The Department of Labor's Interpretation of the Statutory Language Is Not Controlling

Before considering whether Harley's claim of constructive discharge under the WDA must also be dismissed, I will dispose of the defendant's argument that I should follow a recent ruling from the St. Croix Division of this Court that the WDA does not apply to claims of constructive discharge, namely, *Williams v. Kmart,* Civ. No.1999–102, 2001 U.S. Dist. LEXIS 9183, 2001 WL 304024 (D.V.I.St. Croix Div. Mar. 5, 2001). There, the Court dismissed Williams's claim of constructive discharge under the WDA after ruling that constructive discharge is not cognizable under that Act. *See* 2001 U.S. Dist. LEXIS 9183 at *11–13, 2001 WL 304024 at *4–5.[6]

In reaching this contrary conclusion, my colleague applied the general rule that "'the interpretation of a statutory scheme by the administrative agency charged with its enforcement is entitled to great deference. . . . [C]ourts are obligated to regard as controlling a reasonable, consistently applied administrative interpretation,'" relying on several decisions of the Virgin Islands Department of Labor ["DOL"]. *See id.,* 2001 Dist. LEXIS 9183, at *12, 2001 WL 304024, at *4 (quoting *Abramson v. Georgetown Consulting Group, Inc.,* 765 F.Supp. 255, 259 (D.Vi.1991)); *id.,* 2001 Dist. LEXIS, at *12–13, 2001 WL 304024, at *4 (stating that the DOL "has consistently held that a claim of constructive discharge is not cognizable under the WDA"). The DOL cases specifically mentioned in *Williams* are *Cotto v. Kmart,* WD–029–98–STX at *11 (V.I. Dept. of Labor, Apr. 1, 1998) ("'[O]nly terminations from employment are cognizable under the Act, *not constructive discharges.*'") (emphasis in original); *Sheatz v. Four Star*

---

5. Other courts apply a subjective test to determine whether there has been a constructive discharge for purposes of Title VII claims. The subjective test "requires a finding that the discrimination complained of amounts to an intentional course of conduct calculated to force the victim's resignation." *Schafer v. Board of Public Educ.,* 903 F.2d 243, 248 (3d Cir.1990) (explaining the subjective test adopted in other circuits). Whether the objective or subjective test would apply to constructive discharge claims brought under the WDA that not involving allegations of discrimination is not before the Court.

6. The case had been assigned to me after Chief Judge Finch recused himself, and I was about to rule on Williams' fully briefed motion for reconsideration of her WDA claim, when Kmart's petition for chapter 11 bankruptcy protection stayed any further proceedings in that case. Kmart Corporation filed for chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Northern District of Illinois (No. 02–02474) on January 22, 2002. As a result, any further proceedings in *Williams v. Kmart* have been stayed per 11 U.S.C. § 362(a)(1). The only issue remaining to be decided in *Williams* is the purely legal question whether constructive discharge is cognizable under the WDA, since the parties have stipulated to dismiss all matters, "except the pending motion to reconsider the issue of constructive discharge" under the WDA. *See Williams v. Kmart,* Civ. No.1999–012 (D.V.I.St. Croix Div.) (entered Sept. 2001).

*Aviation Co. Inc.*, WD–112–93–STT (V.I. Dept. of Labor, May 4, 1994) (same); and *Samuel v. Wooley's d/b/a Grand Union Supermarket*, WD–232–93–STX (V.I. Dept. of Labor, Mar. 2, 1994) (same).[7] Because the DOL purports to have derived these rulings from language in the Territorial Court's ruling in *Christopher v. Government of the Virgin Islands*, Civ. No. 321/1993 (Terr.Ct. Nov. 25, 1993) (affirming on review a decision of the DOL dismissing a complaint of wrongful discharge for lack of jurisdiction), I start with *Christopher* as the genesis of the DOL's statutory misconstruction of the term "discharge."

The complainant in *Christopher* was discharged by his employer and elected to file an administrative claim of wrongful discharge with the DOL, as permitted by section 77 of the WDA. *See Christopher v. Sunaire Express*, WD–381–92–STX (V.I. Dept. of Labor, Feb. 24, 1993). Soon thereafter, the employer formally reinstated the complainant, but with a demotion and reduction in pay. The employer then converted the four-week period during which the employee had been discharged to a disciplinary suspension. *See id.* at 1–2. Since the complainant was still working for the respondent employer, the Administrative Law Judge ["ALJ"] naturally ruled that the complainant was "not a discharged employee" under the WDA. *Id.* at 2. The ALJ further ruled that, because the only remedy available in an administrative proceeding before the agency is "the reinstatement of the discharged employee with an award of backpay," the DOL did "not have jurisdiction to hear and decide labor disputes concerning suspension and/or demotions." *Id.* The Territorial Court affirmed the DOL's straightforward ruling,

holding that "[s]uspensions are not within the purview of [the WDA]" because, as the language of the statute makes clear, the WDA "offers recourse only to those employees who have been permanently discharged from their employment for a reason other than the permissible grounds enumerated in § 76." *Christopher v. Government of the Virgin Islands*, Civ. No. 321/1993, at 2.

Thus, what both the DOL and the Territorial Court decided in *Christopher* was simply that an employer's adverse action demoting or suspending an employee without terminating the employment relationship does not constitute a "discharge" under the WDA because a discharge necessarily requires a permanent termination of the employment relationship. Neither the DOL's ruling nor the Territorial Court's affirmance in *Christopher* had anything to do with an employee's discharge, constructive or otherwise. The same is true of the two other DOL rulings cited in *Williams* as support for its conclusion that it was bound by the DOL's interpretation that the WDA does not apply to claims of constructive discharge, namely, *Samuel v. Wooley's and Sheatz v. Four Star Aviation.*

The employee in *Samuel* filed an administrative claim of wrongful discharge, not because her employer terminated her, but for "constructive discharge" on the ground that her shift was changed against her wishes. *See Samuel v. Wooley's*, WD–232–93–STX, at 1. Purportedly applying the Territorial Court's interpretation of the WDA in *Christopher*, but clearly misinterpreting it, the DOL ruled that it had no jurisdiction to consider the claim because "only terminations are cognizable under

---

7. The defendant here cites yet another DOL decision that uses the same language, *Daniel v. Marina Market*, WD–301–96–STT, at 2 (Dec. 19, 1996) ("Only terminations from employ-

ment are cognizable under [the WDA], *not constructive discharges.*") (emphasis in original).

the Act, not constructive discharges." *Id.* at 2. Notably, the DOL dismissed the claim on the alternative and substantive ground that, even if constructive discharge is cognizable under the WDA, the forced change in the complainant's shift did not establish a constructive discharge because it did not constitute conditions so intolerable that a reasonable person would feel compelled to resign. *See id.* at 2–3 (citing *Cherchi v. Mobil Oil Corp.*, 693 F.Supp. 156 (D.N.J.1988), *aff'd*, 865 F.2d 249 (3d Cir.1988)). In *Sheatz*, the employee filed an administrative claim of wrongful discharge premised on the fact that he was suspended for one month. *See Sheatz v. Four Star Aviation*, WD–112–93–STT, at 1. In language literally identical to that used in *Samuel*, the DOL reached the same alternative grounds for dismissal stated in *Samuel*: (1) The DOL did not have jurisdiction to hear the case because it did not involve a "termination from employment," and (2) even if constructive discharge is cognizable under the WDA, the complainant had not established facts sufficient to support a claim of constructive discharge under the reasonable person standard. *See id.* at 1.

The DOL's decisions in both *Samuel* and *Sheatz* do not disclose whether the complainants there, like the employee in *Christopher*, still worked for their respective employers at the time of the DOL's rulings. If they did, then *Christopher* appropriately provided the basis for dismissing the complaints for lack of jurisdiction, although any discussion of constructive discharge was superfluous and pure *dicta*. If, as seems more likely, the *Samuel* and *Sheatz* complainants did not still work for the respondent employers, *Christopher* provided no authority whatsoever for the alternative proposition that constructive discharge is not cognizable under the WDA. *Christopher* simply did not decide, or even involve, that question.

Only in *Cotto v. Kmart*, the most recent DOL decision cited in *Williams*, is it clear that the employee resigned from her job and brought an administrative claim for constructive discharge premised on the theory that she had been compelled by intolerable circumstances to resign. According to the employee, she was forced to resign from her job because the manager refused to believe that the cleaning products used on the job made her sick. In its memorandum opinion granting summary judgment to the respondent employer, the DOL supplied no statutory or other form of analysis. It simply recited the boilerplate language and alternative rulings of *Samuel* and *Sheatz*, as misinterpreted from *Christopher*. *See Cotto v. Kmart*, WD–029–98–STX, at 1–3.

Accordingly, the DOL's rulings in *Samuel*, *Sheatz*, and *Cotto*, and their purported Territorial Court progenitor, *Christopher v. Government of the Virgin Islands*, provide absolutely no basis for any judicial deference to the DOL's misinterpretation of *Christopher* and statutory misconstruction of the use of the term "discharge" in the Wrongful Discharge Act. These DOL decisions reveal no reasonable, consistent interpretation of the WDA. Because *Samuel*, *Sheatz*, and *Cotto* represent decisions based on no legal authority, this Court owes them no deference, and *Williams* erred in according them any deference whatsoever. Clearly, the Territorial Court's holding in *Christopher*, that the WDA "offers recourse only to those employees who have been permanently discharged from their employment," does not in any way foreclose a ruling that the term "discharge" includes constructive discharge. Obviously, a person must have resigned from her employment before she can allege that she was constructively discharged and thus permanently terminated as an employee.

Moreover, the alternative ground for dismissal in each of the decisions in *Samuel*, *Sheatz*, and *Cotto* deeply undermines their usefulness as reasonable, consistent interpretations that constructive discharge is not cognizable under the WDA. In each case, the judge ruled *both* that the complaint is not cognizable under the WDA because the employee was not terminated *and* that the assertions made did not amount to claims for constructive discharge.[8]

### 3. The Court Has Jurisdiction To Interpret the WDA in the First Instance; the DOL's Interpretation Is Not Persuasive Authority

■ In any event, this Court is not obligated to defer to an agency interpretation of a statute when that agency is not exclusively charged with its enforcement. *See Adams Fruit Co. v. Barrett*, 494 U.S. 638, 650, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990). The Legislature of the Virgin Islands has provided for an independent enforcement scheme for alleged violations of the WDA, to be administered by the courts. *See* 24 V.I.C. § 79; *see also Nickeo v. Virgin Islands Tel. Corp.*, 42 F.3d 804, 808 (3d Cir.1994) (holding that an employee may file a court action for wrongful discharge without having first exhausted administrative remedies); *Hess Oil V.I. Corp. v. Richardson*, 894 F.Supp.

at 217 (holding that an employee can seek an independent judicial determination of wrongful discharge under the WDA even while an administrative complaint is still pending before the DOL). It therefore "would be inappropriate to consult executive interpretations ... to resolve ambiguities surrounding the scope of the judicially enforceable remedy." *Adams Fruit*, 494 U.S. at 650, 110 S.Ct. 1384.[9]

Moreover, the Legislature's delegation of concurrent enforcement authority to the Department of Labor "does not empower the [Commissioner of Labor] to regulate the scope of the judicial power vested by the statute." *Id.* Since the Legislature has given both the courts and the DOL adjudicatory authority under the WDA, the DOL's interpretation under its administrative processes deserves at best only limited deference from this Court as a possibly persuasive interpretation. The standard for determining the persuasiveness of non-controlling agency interpretations has been articulated by the Supreme Court in *Skidmore v. Swift*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944):

> Rulings, interpretations, and opinions ... while not controlling upon Courts by reason of their authority, do constitute a body of experience and informed judgment to which courts may properly resort for guidance. The weight of such judgment in a particular case will de-

---

**8.** *Cotto* even incorporates a discussion of the "objective" standard for constructive discharge as applied by the Court of Appeals for the Third Circuit in *Clowes v. Allegheny Valley Hospital*, 991 F.2d 1159, 1161 (3d Cir.1993), an age discrimination case brought pursuant to the ADEA.

**9.** The DOL derives its administrative authority from section 77, which gives any "employee discharged for any reason other than those contained in section 76 of this chapter" thirty days to file a written complaint with the DOL. *Id.* § 77(a). Section 78 authorizes the DOL to "request the Territorial Court of the Virgin

Islands to enforce any order issued under section 77 of this chapter." *Id.* § 78. The courts of the Virgin Islands derive their wholly separate and independent authority to administer claims under the Wrongful Discharge Act from section 79, which provides that, "[i]n addition to the remedies provided by sections 77 and 78 of this chapter, any wrongfully discharged employee may bring an action for compensatory and punitive damages in any court of competent jurisdiction against any employer who has violated the provisions of section 76 of this chapter." *Id.* § 79.

pend on the thoroughness evident in its considerations, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Id.* at 140, 65 S.Ct. 161 (*quoted in Madison v. Resources for Human Dev. Inc.*, 233 F.3d 175 (3d Cir.2000)).

Applying this standard, I find the DOL's interpretation of the WDA in *Cotto v. Kmart* to be not merely unpersuasive, but wrong. As explained above, all of the DOL's statements on constructive discharge are derived from a case in which the employee had neither resigned from his job nor been permanently terminated. In addition, in all the cases, including *Cotto*, the agency framed its holdings in the alternative, suggesting that a claim of constructive discharge might in fact succeed under more compelling circumstances.[10] In sum, the DOL's interpretation that constructive discharges are not cognizable under the WDA is without any basis either in the statute or any reasoned articulation; it is grounded on a misinterpretation of its earlier authority as affirmed by the Territorial Court.

Accordingly, this Court is not bound by the Virgin Islands Department of Labor's misinterpretation of the term "discharge" in the WDA.

### 4. Harley's Constructive Discharge Claim Must Fail

■ The procedural and substantive posture of this case requires that I grant the defendant's Rule 12(b)(6) motion to dismiss the plaintiff's WDA claim, and that the dismissal be on the merits. As already discussed, Harley failed to establish at the summary judgment stage that she was constructively discharged for purposes of sustaining her Title VII claim of discrimination. To repeat, "there is no basis for me to find that the working conditions at Caneel Bay were 'so unpleasant or difficult that a reasonable person in the employee's shoes would resign.'" (quoting *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1079 (3d Cir.1992)). Since the standard for establishing constructive discharge under the WDA is the same as the standard applicable to Harley's Title VII claim, dismissal of her WDA claim is unavoidable. *See Rajbahadoorsingh v. Chase Manhattan Bank*, 168 F.Supp.2d 496 (D.Vi.2001) (holding that the *McDonnell–Burdine–Hicks* test for Title VII claims applies to wrongful discharge claims under the WDA).

The general rule is that, if the Court considers extrinsic evidence in deciding a motion to dismiss for failure to state a claim, it must convert the motion to a Rule 56 motion and provide each party with notice and an opportunity to respond. *See* FED.R.CIV.P. 12(b); *Rose v. Bartle*, 871

---

**10.** *See also Jury–Rivera v. Hess Oil V.I. Corp.*, Civ. No.1998/009 (D.V.I.St. Croix Div. Oct. 6, 2000). In that case, the plaintiff alleged that she was forced to resign from her job at HOVIC due to a continued pattern of sexual harassment by her boss, alleging both a violation of Title VII and a violation of the WDA. The defendant, apparently assuming that constructive discharge is a cognizable cause of action under the WDA moved to dismiss the WDA claim on the ground that the environment was not sufficiently hostile that a reasonable person would find it intolerable. Applying the objective standard for constructive discharge under Title VII as adopted in *Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 888 (3d Cir.1984), the Court also assumed without deciding that constructive discharge is cognizable under the WDA and denied the defendant's motion on the ground that the plaintiff had "provided sufficient evidence from which a jury could conclude that a reasonable person in Plaintiff's position ... could find the situation so intolerable as to be forced to resign." *Jury–Rivera*, Civ. No.1998–009, slip op. at 13.

F.2d 331, 340 (3d Cir.1989). Here, however, the defendant has already moved for dismissal of the Title VII constructive discharge claim under Rule 56, expressly arguing that the plaintiff was not constructively discharged under the same standard articulated here for constructive discharge under the WDA. (*See* Mem.Supp.Mot. Summ.J. at 8–10.) As already noted, the plaintiff did not oppose the motion for summary judgment. Thus, although given the opportunity, Harley made no effort to present evidence sufficient to establish that working conditions were so difficult or unpleasant that a reasonable person in her same position would be forced to resign. Under the fairly unusual circumstances of this case, conversion to Rule 56, with notice and opportunity to respond, would not serve the purpose of the mandatory conversion provision, which is to "protect plaintiffs against ... summary judgment by ambush." *Bostic,* 166 F.Supp.2d at 354–55; *see Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993) ("The reason that a court must convert a motion to dismiss to a summary judgment motion if it considers extraneous evidence submitted by the defense *is to afford the plaintiff an opportunity to respond.*") (emphasis added).

The plaintiff here has not been ambushed. To the contrary, she had ample opportunity and failed to respond at all to the defendant's Rule 56 motion, which included evidence and arguments on this very issue of constructive discharge. As I have already fully and finally resolved that Harley's resignation did not rise to the level of constructive discharge, there is no state of facts on which Harley could conceivably recover under the WDA. *See Rose v. Bartle,* 871 F.2d at 342; *see also Hancock Indus. v. Schaeffer,* 811 F.2d 225, 229 (3d Cir.1987) (district court's conversion without notice was harmless error "because the defendants are immune, as a matter of law, from the [plaintiffs'] anti-trust claim ... [thus] there is no state of facts on which the [plaintiffs] could conceivably recover"). Accordingly, I will dismiss Harley's WDA claim.

I have exercised this Court's supplemental jurisdiction to consider the local wrongful discharge act claim, even in the absence of a federal claim, because of the similarity between plaintiff's WDA and Title VII claims. There is no such reason to exercise this Court's supplemental jurisdiction over the remaining territorial claim, and it will be dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3); *Figueroa v. Buccaneer Hotel Inc.,* 188 F.3d 172, 181 n. 10 (3d Cir.1999).

## IV. CONCLUSION

Because Harley has failed to establish a prima facie case of Title VII employment discrimination, the Court will grant the defendant's motion for summary judgment on Count I of the complaint. Although the Court expressly holds today that constructive discharge is cognizable under Virgin Islands law, Harley failed to establish that she was constructively discharged under either the WDA (Count III) or Title VII (Count I). As a result, the Court will grant the defendant's motion to dismiss Counts I and III with prejudice. Finally, Count II will be dismissed without prejudice.

### ORDER

For the reasons set forth in the accompanying Memorandum of even date, it is hereby

**ORDERED** that the defendant's motion for summary judgment on Count I (Docket No. 76) is **GRANTED;** it is further

**ORDERED** that defendant's motion to dismiss Count III (Docket No. 17) is **GRANTED,** and it is further

**ORDERED** that the complaint is **DISMISSED.** The Clerk shall close the file.