Janet G. CLOWES, Appellee

v.

**ALLEGHENY VALLEY HOSPITAL,
Appellant.**

**No. 92–3271.**

United States Court of Appeals,
Third Circuit.

Argued Dec. 3, 1992.

Decided April 23, 1993.

As Amended May 27, 1993.

Helen R. Kotler (argued), Jere Krakoff, Pittsburgh, PA, for appellee.

John E. Lyncheski (argued), Robert S. Grigsby, Jeffrey P. Bauman, Cohen & Grigsby, P.C., Pittsburgh, PA, for appellant.

Before: SCIRICA, ALITO, and LEWIS, Circuit Judges.

**OPINION OF THE COURT**

ALITO, Circuit Judge:

Allegheny Valley Hospital appeals from a judgment awarded under the Age Discrimination In Employment Act, 29 U.S.C. § 621 *et seq.*, based on the constructive discharge of a former employee. We hold that the evidence at trial was insufficient to prove a constructive discharge, and we therefore reverse the judgment of the district court.

## I.

Janet Clowes was employed as a nurse in full- or part-time positions by Allegheny Valley Hospital for nearly 30 years. In March 1987, Clowes, then 53 years old, requested and was granted a transfer to the IV (intravenous) Team. Members of the IV Team were required to insert and change IV's, to make sure that IV's were flowing properly, and to document the procedures performed.

After Clowes's transfer, her supervisor was Diana Bennett Malloy, the IV Team's 34–year–old head nurse. Friction between Malloy and Clowes soon developed.

Clowes claimed that Malloy singled her out for especially close and harsh supervision. In particular, Clowes asserted that Malloy unfairly criticized her for ineptitude in starting IVs. According to Malloy, Clowes too often had to make more than a single needle injection or "stick" in order to start an IV, but Clowes claimed that she was "not doing any more sticks than anyone else" on the staff. Clowes also alleged that Malloy followed her around the hospital and recorded the number of "sticks" she made with each patient but that Malloy made no effort to keep track of the number of "sticks" made by other nurses. Indeed, Clowes asserted that Malloy remained in the hospital after Clowes's day shift ended in order to "check every one of [Clowes's] patients [to] see if she could find anything that [Clowes] did wrong." Clowes said that Malloy would write down everything that Clowes did or said. In addition, Clowes claimed that Malloy spoke to her in a "demeaning, condescending manner" different from that employed with the rest of the staff and that Malloy criticized her sharply in the presence of other nurses. Clowes also pointed to the fact that Malloy's written evaluations often assessed her as "fair" although she had never before received an evaluation of less than "good." Clowes claimed that as a result of this treatment she began to suffer from depression and related symptoms and required psychiatric and other medical treatment.

The hospital painted a different picture of the reasons for the conflict between Malloy and Clowes. The hospital claimed that Clowes's performance on the job declined and that Malloy was concerned about maintaining the professional standards of the IV Team. The hospital asserted that Clowes repeatedly failed to complete the required documentation on her patients, that she was disorganized and had difficulty setting priorities, and that other nurses complained that she made too many "stick" attempts and did not attend to irritated catheter sites.

On November 5, 1987, Malloy and a Nursing Department supervisor held a conference with Clowes and discussed her alleged deficiencies. Clowes was instructed to submit a list of written goals, and she was also informed that her performance would be reviewed periodically and that any problems would be discussed. In addition, Malloy told her that disciplinary action would be taken if she did not improve. Shortly thereafter, Clowes submitted written goals, as well as a response to Malloy's criticisms. Clowes's last day of work at the hospital was November 12. Beginning on November 13, Clowes took vacation and sick leave, and was later placed at her own request on temporary part-time status due to medical reasons. At the end of November, Clowes began working at a nursing home. In March 1988, she submitted a grievance to the hospital, but it was rejected as untimely.

In August 1989, Clowes commenced this action in the United States District Court for the Western District of Pennsylvania. Count 1 of her complaint alleged that the Allegheny Valley Hospital had violated the ADEA by "forcing her to an involuntary retirement" based on her age. The other two counts asserted pendent state claims that are not involved in this appeal.

Clowes's case went to trial before a jury, and the jury returned a verdict in her favor. In response to special interrogatories, the jury found that Clowes had been constructively discharged and that age had been a determinative factor. The district court subsequently entered judgment for Clowes and denied the hospital's motion for

judgment notwithstanding the verdict or for a new trial. This appeal followed.

## II.

The ADEA prohibits, among other things, the "discharge" of a covered individual "because of such individual's age." 29 U.S.C. § 623(*l*). In this case, Clowes's ADEA claim and the judgment she won were predicated on the assertion that she had been constructively discharged. "We employ an objective test in determining whether an employee was constructively discharged from employment: whether 'the conduct complained of would have the foreseeable result that working conditions would be so unpleasant or difficult that a reasonable person in the employee's shoes would resign.'" *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1079 (3d Cir.1992) (quoting *Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 887–88 (3d Cir.1984)).

■■ Because this is an appeal from a judgment entered after trial, we must view the historical facts in the light most favorable to the judgment. *See, e.g., Link v. Mercedes–Benz of North America, Inc.*, 788 F.2d 918, 921 (3d Cir.1986). Whether a reasonable employee would resign when confronted with a particular set of circumstances is not, however, a pure question of historical fact, and the appropriate standard of review for such questions of reasonableness is subject to dispute. *See United States v. McKines*, 933 F.2d 1412, 1424–26 (8th Cir.1991) (*en banc*); *id.* at 1419–22 (Beam, J., dissenting). We need not resolve this question in the present case. Even if subject to review only for clear error, the district court's holding that Clowes was constructively discharged cannot be sustained.

We first note that Clowes cannot rely on many of the factors commonly cited by employees who claim to have been constructively discharged. Clowes was never threatened with discharge; nor did her employer ever urge or suggest that she resign or retire. *Compare Spulak v. K–Mart Corp.*, 894 F.2d 1150, 1154 (10th Cir.1990); *Levendos v. Stern Entertainment, Inc.*, 860 F.2d 1227, 1228 (3d Cir.1988) (reversing summary judgment for employer). Similarly, Clowes's employer did not demote her[1] or reduce her pay or benefits.[2] Clowes was not involuntarily transferred to a less desirable position,[3] and her job responsibilities were not altered in any way.[4] She was not even given unsatisfactory job evaluations[5] but merely received ratings of "fair."

■ It is also highly significant that Clowes, prior to leaving her position with the hospital, never requested to be transferred to another position, never advised the hospital that she would feel compelled to leave if changes regarding the manner in which she was being supervised were not made, and did not even attempt to file a grievance until long after she had stopped working at the hospital. As other courts of appeals have noted, a reasonable employee will usually explore such alternative avenues thoroughly before coming to the conclusion that resignation is the only option.[6] *Bozé v. Branstetter*, 912 F.2d 801,

---

1. *See, e.g., Shealy v. Winston*, 929 F.2d 1009 (4th Cir.1991); *Buckley v. Hospital Corp. of America*, 758 F.2d 1525, 1530–31 (11th Cir.1985). These cases and those cited in footnotes three and five are cited solely to illustrate some of the factors on which plaintiffs claiming constructive discharge have relied. We express no view as to whether these decisions gave those factors the proper weight.

2. *See, e.g., Berger v. Edgewater Steel Co.*, 911 F.2d 911, 923 (3d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991).

3. *See, e.g., Meyer v. Brown & Root Construction Co.*, 661 F.2d 369 (5th Cir.1981); *Muller v. U.S. Steel Corp.*, 509 F.2d 923 (10th Cir.), *cert. denied,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975).

4. *See, e.g., Gray*, 957 F.2d at 1082 (reporter removed from desirable beat; no constructive discharge); *Goss*, 747 F.2d at 888–89 (sales representative removed from prior territory; constructive discharge).

5. *See, e.g., Junior v. Texaco, Inc.*, 688 F.2d 377, 380 (5th Cir.1982).

6. We do not require that such steps be taken in all cases. An employee may be able to show working conditions were so intolerable that a reasonable employee would feel forced to resign without remaining on the job for the period necessary to take those steps. In this case, however, the evidence is lacking in other respects and the plaintiff's complaint focuses ex-

805 (5th Cir.1990); *Garner v. Wal–Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987).[7]

■ Moreover, it is significant, in our view, that Clowes's complaints focused exclusively on Malloy's allegedly overzealous supervision of her work. Clowes has not brought to our attention a single case in which a constructive discharge has been found based solely upon such supervision. While we do not hold that an employer's imposition of unreasonably exacting standards of job performance may never amount to a constructive discharge, we are convinced that a constructive discharge claim based solely on evidence of close supervision of job performance must be critically examined so that the ADEA is not improperly used as a means of thwarting an employer's nondiscriminatory efforts to insist on high standards.

In support of her claim of constructive discharge, Clowes relies heavily on evidence regarding the impact that the events in question had on her. But as we have noted, " 'the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge.' " *Gray*, 957 F.2d at 1083 (quoting *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985)).

We recognize that the jury, which heard testimony by both Clowes and Malloy, presumably concluded that Malloy treated Clowes unfairly and that her criticisms of Clowes were not entirely warranted. We accept these apparent conclusions for purposes of this appeal, but it is clear that unfair and unwarranted treatment is by no means the same as constructive discharge.

In sum, we hold that the evidence in this case was insufficient to show that Clowes was constructively discharged. The judg-

ment of the district court is therefore reversed.

---

clusively on the actions of one supervisor; accordingly, we find it significant that the plaintiff did not even request a transfer before deciding to resign.

**7.** In a somewhat similar vein, some courts have held that an employee must generally pursue

litigation before quitting and claiming constructive discharge. *See, e.g., Brooms v. Regal Tube Co.*, 881 F.2d 412, 423 (7th Cir.1989); *Bourque v. Powell Elec. Mfg. Co.*, 617 F.2d 61, 65–66 (5th Cir.1980).