## McAuliffe-Funk v. Coordinated Health Systems

382

C.P. of Lehigh County, no. 2000-C-2148.

*John R. Vivian Jr.,* for plaintiff.
*Nancy Conrad,* for defendant.

GARDNER, *P.J.,* December 27, 2001—This matter is before the court on defendant's preliminary objections to plaintiff's complaint and motion for attorney's fees filed September 12, 2000. Plaintiff's reply to defendant's preliminary objections to plaintiff's complaint and motion for attorney's fees was filed October 2, 2000. On April 24, 2001, the undersigned conducted a status telephone conference at which counsel for plaintiff withdrew plaintiff's demand for a jury trial and plaintiff's claims for punitive damages and disparate treatment gender discrimination. Subsequently, the undersigned en-

tered an order dated April 24, 2001, and filed May 22, 2001, disposing of plaintiff's claims.

In our April 24, 2001 order, we struck the June 13, 2001 oral argument scheduled for this matter and considered the matter on the basis of the memoranda of law submitted by the parties. For the reasons expressed below, we sustain defendant's preliminary objections in part and overrule them in part.

Initially, defendant propounded five preliminary objections as follows: (1) a demurrer and or motion to strike plaintiff's claim for jury trial; (2) a demurrer and motion to strike plaintiff's claim for punitive damages; (3) a demurrer to plaintiff's disparate treatment gender discrimination claim; (4) a demurrer to plaintiff's constructive discharge claim; and (5) a motion for attorney's fees.[1] As stated above, plaintiff withdrew her claims numbered (1), (2) and (3). Accordingly, the remaining preliminary objections are the demurrer to plaintiff's constructive discharge claim and defendant's motion for attorney's fees.

Initially, we will address defendant's demurrer to plaintiff's claim for constructive discharge. Plaintiff brings her claim for constructive discharge pursuant to the Pennsylvania Human Relations Act.[2] In her complaint, plaintiff contends that she was employed by defendant as an administrative assistant at defendant Coordinated Health Systems from April 23, 1997, through March 5, 1998.[3] Plaintiff alleges that in the summer of

---

1. See prayer for relief in defendant's preliminary objections filed September 12, 2000.

2. Act of October 27, 1955, P.L. 744, no. 222, §1, as amended, 43 P.S. §§951-963.

3. Paragraph 5 of plaintiff's complaint filed August 21, 2000.

1997, Keith Roberts was employed by defendant as a physical therapy assistant.[4] Shortly after commencing employment, Mr. Roberts allegedly started making statements to plaintiff that he was going though a bitter divorce and was very attracted to her.[5]

Plaintiff further contends that Mr. Roberts often commented to co-employees concerning her physical attributes. Mr. Roberts allegedly stated that he thought plaintiff was "hot" and "had a killer body." [6] Plaintiff asserts that Mr. Roberts leered at her while she exercised on the physical therapy equipment and inappropriately touched her by placing his hands on her neck and shoulders. Plaintiff contends that she repeatedly informed Mr. Roberts of her objection to being touched.[7]

In addition, plaintiff asserts that Mr. Roberts made obscene comments and gestures to her privately and in the presence of co-workers. These included grabbing his private parts in front of plaintiff, running his tongue over his lips and whispering inappropriate comments into plaintiff's ear.[8]

In response to Mr. Roberts alleged inappropriate actions, plaintiff informed him on numerous occasions that she objected to his sexual advances, gestures and touching.[9] In addition, plaintiff contends that the alleged harassing behavior was known to at least four of defendant's supervisory and management employees. She

---

4. Complaint paragraphs 6 and 7.
5. Complaint paragraphs 10 and 11.
6. Complaint paragraph 12.
7. Complaint paragraphs 13 and 14.
8. Complaint paragraphs 15-18.
9. Complaint paragraph 19.

avers that at least two of them spoke to Mr. Roberts about his behavior. Moreover, one of the supervisory staff eventually reprimanded Mr. Roberts.[10]

Plaintiff asserts that after Mr. Roberts was reprimanded, he continued his inappropriate behavior, but did so in a much more angry and aggressive manner. She contends that he attempted to exact retribution from plaintiff for causing the reprimand.

Following the reprimand, Mr. Roberts allegedly told plaintiff in front of the supervisor who reprimanded him, "You just wait. I'm gonna make your job ten times—count'em—ten times harder." Plaintiff contends that the supervisor took no action after hearing this statement.[11] Plaintiff states that Mr. Roberts then began to make unfounded complaints about her to the supervisory staff about her job performance and told other co-workers that he was trying to get plaintiff fired.[12]

Plaintiff alleges that on March 6, 1998, as a result of an appointment she requested with the administrator and chief executive of defendant corporation, Jane Dilorio, she submitted her letter of resignation.[13] Plaintiff contends that after she submitted her resignation, Miss Dilorio asked "is this due to Keith Roberts?" [14]

In *Kroen v. Bedway Security Agency Inc.,* 430 Pa. Super. 83, 94, 633 A.2d 628, 633 (1993), the Superior Court of Pennsylvania first recognized a cause of action in tort

---

10. Complaint paragraphs 20-22.
11. Complaint paragraphs 23-25.
12. Complaint paragraphs 26-27.
13. Complaint paragraphs 28-29.
14. Complaint paragraph 30.

for "constructive discharge" of an at-will employee upon a claim of wrongful discharge where the employer makes working conditions so intolerable that the employee is forced to resign. As stated for the United States Court of Appeals for the Third Circuit:

"[N]o finding of a specific intent on the part of the employer to bring about a discharge is required for the application of the constructive discharge doctrine. The court need merely find that the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Goss v. Exxon Office Systems Company,* 747 F.2d 885, 888 (3d Cir. 1984).

" 'Intolerability' is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign; presumably every resignation occurs because the employee believes that it is in his [or her] best interest to resign. Rather, '[i]ntolerability . . . is assessed by the objective standard of whether a "reasonable person" in the employee's position would have felt *compelled* to resign,'—that is, whether he [or she] would have had no choice but to resign. (emphasis in original)" *Connors v. Chrysler Financial Corp.,* 160 F.3d 971, 976 (3d Cir. 1998), citing *Blistein v. St. John's College,* 74 F.3d 1459 (4th Cir. 1996).

In addition to meeting the objective standard, defendant contends that a plaintiff must usually show that she attempted to explore alternatives before deciding to resign. *Clowes v. Allegheny Valley Hospital,* 991 F.2d 1159,

1161 (3d Cir. 1993). Moreover, defendant contends that employees have an obligation to not assume the worst and jump to conclusions too fast. *Stewart v. Weis Markets Inc.,* 890 F. Supp. 382 (M.D. Pa. 1995). Thus, defendant argues that part of an employee's obligation of reasonableness is an obligation to give the employer an opportunity to correct the situation before resigning because of intolerable conditions.

Here, defendant contends that the allegations in plaintiff's complaint fall short of the required pleading standard. Specifically, defendant asserts that plaintiff fails to allege that she was forced to resign because of intolerable discriminatory conditions. She does not allege that defendant refused to discharge Mr. Roberts, or that a reasonable person in her position would have no choice but to resign. Also, plaintiff failed to allege that she attempted to explore alternatives before deciding to resign. Hence, defendant contends that plaintiff's claim for constructive discharge must fail.

Plaintiff contends that her complaint sets forth very specific allegations of the conduct which created the allegedly hostile work environment. Moreover, plaintiff contends that allegations of numerous complaints made to management or supervisory personnel are also set forth in the complaint. Plaintiff also asserts that the complaint sets forth allegations that defendant failed to take prompt remedial action based on her complaints.

Finally, plaintiff contends that in *Clowes, supra,* cited by defendant for the proposition that a plaintiff must usually explore reasonable alternatives, the Third Circuit also stated: "We do not require that such steps be taken in all

cases. An employee may be able to show working conditions were so intolerable that a reasonable employee would feel forced to resign without remaining on the job for the period necessary to take those steps." *Clowes,* 991 F.2d at 1162 n.6. For the following reasons, we find that plaintiff's complaint does state a cognizable cause of action for constructive discharge.

Preliminary objections in the nature of a demurrer admit all well-pleaded allegations and material facts as averred in the complaint, as well as inferences reasonably deducible therefrom. *Main Line Health Inc. v. Pennsylvania Medical Professional Liability Catastrophe Loss Fund,* 738 A.2d 66 (Pa. Commw. 1999).

A preliminary objection in the nature of a demurrer should only be sustained where, as a matter of law, the facts as pleaded do not permit recovery. *Kapton v. Bell Atlantic Nynex Mobile,* 700 A.2d 581 (Pa. Commw. 1997). If however, there is any doubt as to whether a demurrer should be sustained, the court must overrule the preliminary objection. *Wiernik v. PHH U.S. Mortgage Corp.,* 736 A.2d 616 (Pa. Super. 1999).

Applying this standard, we conclude that under the facts alleged, a reasonable person could believe that to solve the problem he would have to resign. Moreover, the facts alleged constitute the type of fact situation contemplated by the Third Circuit in *Clowes, supra,* where a plaintiff would resign rather than seek other options. Accordingly, we overrule defendant's preliminary objection in the nature of a demurrer to plaintiff's claim for constructive discharge.

Included in defendant's preliminary objections is a motion for attorney's fees and costs based on plaintiff's allegedly frivolous demands for a jury trial and for punitive damages, which claims were disposed of by our April 24, 2001 order.

The Supreme Court of Pennsylvania has held that a plaintiff has no right to punitive damages under the PHRA. *Hoy v. Angelone,* 554 Pa. 134, 720 A.2d 745 (1998). The Supreme Court has also held that a plaintiff has no right to a jury trial under the PHRA. *Wertz v. Chapman Township,* 559 Pa. 630, 741 A.2d 1272 (1999).

Moreover, plaintiff's counsel was well aware of both of these cases. Plaintiff's counsel, John R. Vivian Jr., Esquire, was counsel for the plaintiff in *Hoy* and was made aware of the Supreme Court decision in *Wertz* by a letter dated August 31, 2000, from counsel for defendant.[15] Hence, defendant contends that it is entitled to counsel fees for bad faith conduct pursuant to 43 P.S. §962(c.3); and for obdurate, vexatious and bad faith conduct pursuant to 42 Pa.C.S. §2503(7) and (9).

Plaintiff's counsel contends that plaintiff's demands for a jury trial and punitive damages do not entitle defendant to an award of attorney's fees and costs. More specifically, counsel argues that plaintiff voluntarily withdrew her claims for a jury trial and punitive damages and that an associate in the office of John R. Vivian Jr. simply made a mistake in asserting these claims. Moreover, plaintiff's associate was employed by Attorney

---

15. See exhibit D attached to defendant's memorandum of law in support of its preliminary objections to the complaint and motion for attorney's fees.

Vivian after the Supreme Court's decision in *Hoy v. Angelone,* and therefore had no involvement in the case which decided the punitive damages issue.

Counsel further argues that while he acknowledges that a mistake was made, that does not rise to the level of obdurate, vexatious or bad faith conduct. Therefore, counsel fees and costs should not be imposed against plaintiff's counsel under 42 Pa.C.S. §2503(7) and (9) or under 43 P.S. §962(4)(c.3).

For the following reasons, we agree with plaintiff in part, and with defendant in part.

Section 962(4)(c.3) of the PHRA states:

"If, *after a trial* held pursuant to subsection (c), the court of common pleas finds that a defendant has not engaged in or is not engaging in any unlawful discriminatory practice as defined in this act, the court may award attorney fees and costs to the prevailing defendant if the defendant proves that the complaint was brought in bad faith." (emphasis added)

Because this matter is before the court on defendant's preliminary objections, and not after a trial, an award of attorney's fees and costs is not appropriate under this statute. Accordingly, we agree with plaintiff that defendant's motion based on section 962(4)(c.3) is inappropriate.

Next, defendant contends that it is entitled to attorney's fees and costs pursuant to 42 Pa.C.S. §2503(7) and (9). Those sections provide:

"*§2503. Right of participants to receive counsel fees*

"The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter: . . .

"(7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter. . . .

"(9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith."

In this case, plaintiff's claims for a jury trial and for punitive damages were inappropriate and without legal basis. Plaintiff's counsel voluntarily withdrew these claims in conformity with the decisions of the Supreme Court of Pennsylvania. However, counsel's explanation for the insertion of the claims in the first instance is unpersuasive and his failure to withdraw the claims prior to the filing of the within motion is without justification.

Counsel for plaintiff contends that a former associate in his office included the punitive damage claim and demand for jury trial in the complaint. Moreover, that associate was not a member of Mr. Vivian's firm at the time of the Supreme Court's decision in *Hoy v. Angelone*. However, counsel does not provide any reason for his failure to address the situation when requested in defense counsel's August 31, 2000 letter. Moreover, Mr. Vivian's assertion that it was the fault of this associate attorney is belied by the fact that Mr. Vivian's own signature appears at the end of plaintiff's complaint.

"By definition, where there is no basis in law or fact for the commencement of an action, the action is arbitrary." *Thunberg v. Strause,* 545 Pa. 607, 619, 682 A.2d 295, 301 (1996). Because Mr. Vivian was counsel in the

*Hoy* case, he had firsthand knowledge of the Supreme Court's holding that punitive damages are not recoverable in a PHRA case. When defense counsel called the situation to the attention of plaintiff's counsel, Mr. Vivian did not seize upon the opportunity to correct this "mistake."

Accordingly, because it is clear that plaintiff did not have any basis in law or fact for the assertion of the claims for a jury trial or punitive damages, we grant defendant's motion for attorney's fees pursuant to 42 Pa.C.S. §2503(9). We direct plaintiff's counsel, John R. Vivian Jr., Esquire, to pay defendant $200 for counsel fees incurred by defendant as a result of plaintiff's counsel's conduct. In addition, we deny defendant's motion for attorney's fees pursuant to 42 Pa.C.S. §2503(7) as moot.

## ORDER

Now, December 27, 2001, upon consideration of defendant's preliminary objections to plaintiff's complaint and motion for attorney's fees, which preliminary objections and motion were filed September 12, 2000; upon consideration of plaintiff's reply to defendant's preliminary objections to plaintiff's complaint and motion for attorney's fees filed October 2, 2000; upon consideration of the briefs of the parties; it appearing that on April 24, 2001, plaintiff withdrew her demand for a jury trial, and her claims for punitive damages and disparate treatment gender discrimination;[1] and for the reasons set forth in the accompanying opinion,

---

1. See status conference order of April 24, 2001.

It is ordered that defendant's preliminary objection in the nature of a demurrer to plaintiff's claim for constructive discharge is overruled.

It is further ordered that on or before January 14, 2001, defendant shall file an answer to plaintiff's complaint.

It is further ordered that defendant's motion for attorney's fees is granted in part, denied in part.

It is further ordered that defendant's motion for attorney's fees pursuant to the Act of October 27, 1955, P.L. 744, §12, as amended, 43 P.S. 962(4)(c.3) is denied.

It is further ordered that defendant's motion for attorney's fees pursuant to 42 Pa.C.S. §2503(9) is granted.

It is further ordered that plaintiff's counsel, Attorney John R. Vivian Jr., Esquire, shall pay defendant $200 for attorney fees.

It is further ordered that defendant's motion for attorney's fees pursuant to 42 Pa.C.S. §2503(7) is denied as moot.