Wanda G. TAYLOR, Appellant,

v.

BRANDYWINE SCHOOL DISTRICT, Appellee.

No. 05–4803.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Sept. 11, 2006.

Filed Sept. 29, 2006.

---

Wanda G. Taylor, Wilmington, DE, pro se.

William L. Doerler, White & Williams, Wilmington, DE, for Appellee.

Before: BARRY, CHAGARES and COWEN, Circuit Judges.

OPINION

PER CURIAM.

Wanda G. Taylor, acting pro se, appeals from an order of summary judgment in favor of Brandywine School District ("School District") in her action for racial discrimination in employment under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000a–2000h–6. Taylor is an African–American female who was employed as a secretary at Springer Middle School in Wilmington, Delaware, from 1972 until 2002. She alleges that she was denied promotions and ultimately constructively discharged on the basis of her race and as

retaliation for having complained of discriminatory treatment and harassment.

The District Court for the District of Delaware granted summary judgment to the School District on September 30, 2005, holding that some of Taylor's claims were time barred, that she had failed to satisfy her burden to demonstrate a prima facie case of racial discrimination for those that were not time barred, and that she had not demonstrated constructive discharge. The District Court concluded in the alternative that even if Taylor had established a prima facie case, the School District had put forth a legitimate, nondiscriminatory rationale for her discharge that Taylor had not shown to be pretextual.

Taylor timely appealed. The School District moves for summary affirmance under Third Circuit L.A.R. 27.4 on the basis that the Taylor had failed to present any substantial question in her brief. After considering the parties briefs, we will affirm the grant of summary judgment for the reasons stated below.

## I.

Taylor began working as a clerk in the New Castle School District in 1972. In 1981, after the New Castle School District was partially merged into the Brandywine School District, Taylor began working as a clerk in the Brandywine District. In 1985, she was promoted to Attendance Clerk, and in 1990, she was promoted to Secretary. In 1995, she was promoted to Guidance Secretary at Springer Middle School ("Springer"), a position in which she also performed duties normally associated with an Attendance Clerk.

In May 2000, Taylor sent a letter to Ned Brown, then-Principal of Springer, alleging that she had suffered racially discriminatory and disrespectful treatment by certain co-workers. In June 2000, she sent a letter to Dr. Joseph P. DeJohn, then-Superintendent of the School District, asking him to address the complaints raised in her letter to Brown and alleging that she had been discriminated against with respect to promotion and pay. On or before August 29, 2000, Taylor met with DeJohn, Michael Gliniak, who had replaced Brown as the Principal at Springer, and Donald Fantine, then-Assistant Superintendent of Operations, to discuss her concerns. After this meeting, she wrote a letter to DeJohn expressing her satisfaction with the results of the meeting and stating that "[s]ince Mr. Gliniak has been acting principal at Springer Middle School, I can see the improvement of the working atmosphere."

Beginning in November 2000, Gliniak received several complaints from parents and other Springer employees regarding Taylor's allegedly rude behavior. Gliniak met several times with Taylor to address these concerns, repeatedly emphasizing the need to treat parents and other staff members with courtesy and respect. Gliniak also offered to restructure Taylor's job or move the location of her office in order to help ameliorate the problems, but Taylor elected to preserve the status quo. On November 12, 2001, Gliniak reprimanded Taylor for taking orders for her home business while at school.

Sometime in late 2001 or early 2002, a student told Taylor that a teacher had made inappropriate comments to her and that she was uncomfortable attending his class. When Taylor told her to report the teacher's behavior to the Assistant Principal, the student said that she did not feel comfortable doing so because the Assistant Principal had made sexual comments to her. Taylor did not immediately report this incident, and later reportedly refused to provide investigators with a full account of what the student had told her and when.

Taylor sent a letter to the President of the School Board dated March 14, 2002, tendering her resignation "due to personal

reasons." The letter was stamped "received" on March 15, 2002. On March 15, 2002, when she went to work, Taylor was presented with a termination notice by Gliniak and instructed to clean out her desk and exit the building. Taylor stated in her deposition that she submitted a letter of resignation that day backdated to March 14 in the hopes that the School Board would accept her resignation and she would be able to preserve her benefits. Her retirement effective March 15 was approved by the School Board on March 22, 2002.

On April 19, 2002, she filed a charge with the Delaware Department of Labor ("DDOL"), alleging racial discrimination and retaliation. On February 28, 2003, DDOL concluded that there was "no reasonable cause to believe that [the School District] engaged in an unlawful employment practice" in violation of state law. On June 11, 2003, the Equal Opportunity Employment Commission ("EEOC") adopted DDOL's findings and issued a right to sue letter and position statement finding that Taylor had been paid according to state salary guidelines based on position, experience, and training, and that there was no evidence of retaliation. The only secretary at Springer who received a higher salary was the principal's secretary, who had a greater level of training than Taylor. The EEOC also concluded that Taylor had violated School District policy by failing to report the allegation of sexual harassment, and by failing to cooperate with investigators by providing a complete account of her conversations with the student.

On October 7, 2003, Taylor filed a complaint in the District Court for racial discrimination, retaliation, constructive discharge, and hostile work environment. Upon the School District's motion for summary judgment, the District Court held that Taylor's claims predicated on events occurring before June 23, 2001, were time barred because she had not demonstrated a continuous violation. With respect to later events, the District Court found that Taylor had not established a prima facie case of racial discrimination because she had not established that similarly situated employees were treated more favorably, or that any adverse employment actions she suffered gave rise to an inference of racial discrimination. The District Court further found that even if she had established a prima facie case of racial discrimination, the School District had legitimate, nondiscriminatory reasons for terminating her employment. Specifically, the School District had produced evidence demonstrating that Taylor had violated School Board Policy and state law by failing to promptly report a student's complaint of sexual harassment, and that she had failed to cooperate with the Delaware State Police investigating the claim, both of which were grounds for termination of employment. The District Court found that Taylor had not satisfied her burden to prove that these legitimate reasons were pretextual.

The District Court also found Taylor's claims of discrimination in salary unsubstantiated by the record. The School District had produced evidence showing that Taylor was paid according to the standard salary schedule for secretaries, and that during fiscal years 2000–01 and 2001–02, Taylor was in fact the highest paid Attendance/Guidance secretary of all similarly situated Attendance/Guidance secretaries in the School District. The District Court additionally rejected Taylor's constructive discharge claim because she had not satisfied her burden to show that working conditions were so unpleasant or difficult because of racial animus that a reasonable person in her position would resign.

The District Court also granted summary judgment to Brandywine School Dis-

trict on Taylor's retaliation claim. The District Court found that there was no causal connection between the allegedly retaliatory action—her forced retirement—and the protected activity—complaining about her salary and treatment by co-workers nearly two years previously. The District Court found in the alternative that the School District had offered a legitimate reason for the decision to terminate Taylor, which was her failure to comply with school policy and state law regarding the sexual harassment complaint. According to the District Court, "[n]othing in the record suggests that the School District invoked this policy or inconsistently applied it to Ms. Taylor as a pretext for retaliation."

## II.

On appeal, Taylor argues that the District Court erred in finding claims predicated on events occurring before June 23, 2001, time barred because her claims were based on continuing violations. She also argues that the District Court erred in granting summary judgment to the School District on her retaliation claim because she had demonstrated that adverse employment actions, including lack of promotions and inadequate pay, were taken against her due to her complaints about racial discrimination, and that the School District's stated reasons for adverse employment actions against her were pretextual. She argues that the District Court also erred in granting summary judgment to the School District on her constructive

discharge claims because she presented evidence, such as the termination letter signed by Michael Gliniak, demonstrating that her workplace was so hostile that a reasonable person would have had no choice but to resign. Finally, she argues that she alleged sufficient evidence to create a prima facie case for racial discrimination in pay, because she had shown that she was not the highest paid secretary in the School District.[1]

■ We consider first whether the District Court erred in determining that Taylor's claims predicated on events before June 23, 2001, were time barred. Title VII requires a claimant to file a charge with the EEOC within 300 days of the allegedly unlawful employment practice if the claimant has filed a parallel proceeding with a state agency. 42 U.S.C. § 2000e–5(e)(1). Taylor first filed a claim for racial discrimination and retaliation with the DDOL on April 19, 2002.

A plaintiff may pursue an action for a continuing violation stretching back before the 300–day period, however, if she can show that at least one discriminatory act occurred during the 300–day period, and that the harassment or discrimination was part of a continuing pattern of discrimination, as opposed to isolated or sporadic acts of intentional discrimination. *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 481 (3d Cir.1997). Taylor has not met this burden, however, because she has not demonstrated a pattern or practice of discrimination.

1. The School District argues in its briefs that because the only claims raised by Taylor before DDOL and EEOC were retaliation and racial discrimination in pay, Taylor has failed to satisfy the exhaustion requirement for her other claims. However, Taylor's racial discrimination and constructive discharge claims are fairly within the scope of the EEOC charge. *See Waiters v. Parsons*, 729 F.2d 233, 238 (3d Cir.1984). Accordingly, we

will consider every issue decided by the District Court and raised in Taylor's appeal. We have jurisdiction under 28 U.S.C. § 1291 to review the District Court's grant of summary judgment. *See Tomasso v. Boeing Co.*, 445 F.3d 702, 705 n. 3 (3d Cir.2006). We review an order granting summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party, in this case, Taylor. *Id.*

As discussed in more detail below, Taylor has not convincingly described even one incident of racially motivated harassment or discrimination at work. She alleges that she was denied promotions, but denial of a promotion is generally a discrete event whose consequences are immediate and permanent and require a prompt response under Title VII. *See id.* at 484. In this case, Taylor has failed to name any specific job for which she applied and was rejected. She attests to a general feeling that she was being passed over for promotions, but does not provide evidence of what those positions were, when they were available, and whether she applied for them. Accordingly, we agree with the District Court that Taylor does not demonstrate a pattern or practice of continuing discrimination allowing her to avoid the 300–day time limit.

Narrowing our consideration to events occurring after June 23, 2001, we also agree with the District Court's grant of summary judgment to the School District on Taylor's racial discrimination claim. In order to establish a prima facie case of racial discrimination, a claimant must demonstrate that (1) she is a member of a protected class; (2) she was qualified for the position she held or sought; (3) she suffered an adverse employment action; and (4) similarly situated persons who are not members of the protected class were treated more favorably, or that the circumstances of her termination give rise to an inference of discrimination. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410–11 (3d Cir.1999). Taylor has met the first two criteria because she is African–American and the record establishes that she was qualified for the position of Guidance/Attendance secretary, which she had been performing since 1995.

Viewing the evidence in the light most favorable to Taylor, she has not alleged evidence sufficient to support an inference that the School District took an adverse employment decision based on any illegal discriminatory criterion. *O'Connor v. Consol. Coin Caterers, Corp.*, 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). Taylor alleges that her resignation amounts to an adverse employment action in the form of constructive discharge. See 42 U.S.C. § 2000e–2(a)(1); *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3d Cir.1993). The record demonstrates that Taylor did not write and deliver her resignation letter until Gliniak had given her a termination letter. Taylor backdated the letter in order to preserve her benefits, and the School Board accepted her resignation effective March 15, 2002, awarding her all accrued benefits as if she had retired. We note also that Gliniak had previously suggested to Taylor in a memo that she retire or transfer. *See Clowes,* 991 F.2d at 1161 (noting that successful constructive discharge claims often involve employees that were asked to resign or threatened with firing).

To establish constructive discharge, Taylor must put forth evidence that the School District, by illegal discriminatory acts, "knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir. 1996) (quoting *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 888 (3d Cir.1984)). She has failed to satisfy this burden. Simply put, there is no evidence that whatever friction arose between Taylor and her employer was the result of racial animus. *Cf. Spulak v. K–Mart Corp.*, 894 F.2d 1150, 1154 (10th Cir.1990) (finding evidence sufficient to support constructive discharge where employee resigned in order to preserve retirement benefits because employee had been singled out "for unduly harsh and discriminatory treatment" over minor

infractions that employer normally overlooked).

The record demonstrates that on several occasions, Gliniak discussed with Taylor complaints he had received regarding her rude treatment of parents and other employees. Gliniak offered her a chance to restructure her job in order to address some of the concerns, but Taylor's allegations that Gliniak harassed her or held her to a higher standard are not convincing. For example, Taylor says that Gliniak harassed her by stopping into her office every morning and subjecting her to higher degree of scrutiny, but she also says that he complimented her work frequently. She says that Gliniak permitted other staff members to speak to her rudely, but she does not provide an example of an instance in which this occurred. She also complains that he failed to discipline the school nurse after Taylor reported to him that the nurse was mishandling student files, and allowed other employees to loaf while she was working.

These bare and unsubstantiated allegations are not sufficient to meet Taylor's burden. As the Principal, Gliniak had a duty to address the complaints of parents and staff members—there is no evidence that he failed to address complaints received about other staff members or subjected Taylor to a different standard. We cannot infer racial animus simply from the fact that he was doing his job. *See Jones,* 198 F.3d at 414 ("Overall, the circumstances of this case ... reflect a situation in which the employer should have been able to take adverse employment actions against the employee without fear of being embroiled in an expensive lawsuit.").

■ We next consider whether the District Court erred in finding that Taylor had failed to establish a prima facie case of racial discrimination with respect to her allegations that she was denied promotions, training, and pay. 42 U.S.C. § 2000e(a). Although Taylor argues that she has met her burden because she has demonstrated that some secretaries in the School District made more money than she, the relevant question is whether she was paid less than those similarly situated. The facts demonstrate that Taylor's salary complied with the District's seniority tables and pay grades, and met or exceeded those of her peers who were similarly situated.[2] Secretaries who made more than Taylor either had a higher degree of training or were serving in positions with higher pay grades. Furthermore, of the three secretaries in Taylor's pay grade making higher salaries than she, two were African–American.

Although Taylor complains that she was denied promotions to available positions for which she was qualified, her testimony on this topic is too vague to create an inference of discrimination. She is unable to name specific dates when positions were available, seems unaware whether positions were advertised, and does not appear to have actually applied for any of available position. Her complaints about denial of training are equally vague and unsubstantiated.

Accordingly, Taylor has not established a material question of fact whether she was discriminated against with respect to pay, promotions, training, or any other employment decisions. Because we agree with the District Court that Taylor has failed to demonstrate that adverse employment actions were taken against her in this regard, we need not address whether the School District provided a legitimate

---

2. The record also demonstrates that Taylor received regular bonuses and raises. In 2000 and 2001, for example, she received 3% bonuses for excellent attendance, and in 2001, she received a 3% plus $550 raise of salary.

non-discriminatory reason for any adverse actions.

■ The District Court also granted summary judgment to the School District on Taylor's retaliation claim. Taylor devotes most of her brief to arguing that she was not promoted and ultimately discharged as retaliation for having raised complaints of racial discrimination and poor working conditions in May and June of 2000 with her letters to Ned Brown (then Principal of Springer) and Joseph DeJohn (Superintendent of Brandywine Schools). In order to establish a prima facie case of retaliation, Taylor must show that (1) she engaged in a protected activity; (2) she suffered adverse action by the employer either after or contemporaneously with the protected activity; and (3) there is a causal connection between the adverse action and the protected activity. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir.1997).

Assuming Taylor's complaints to administrators about racial discrimination were protected activity, *see* 42 U.S.C. § 2000e–3(a), and assuming she did suffer adverse action, Taylor has failed to demonstrate any causal connection between those complaints and her discharge nearly two years later. Rather, the record demonstrates that her initial complaints were amicably resolved by the meeting between Taylor, DeJohn, Donald Fantine (then Assistant Superintendent of Operations), and Gliniak (who had replaced Brown as Principal of Springer) at the end of August 2000. After the meeting, Taylor wrote a letter to DeJohn expressing her satisfaction with the results of the meeting and with Gliniak as the new Principal at Springer. Taylor's resignation did not occur until about eighteen months later, and there is no evidence that it was precipitated by her complaints in 2000, nor is there evidence of racial animus surrounding the events leading to her resignation.

Even if Taylor were able to satisfy the prima facie test for retaliation, she cannot satisfy her burden to prove by a preponderance of the evidence that the School District's proffered non-discriminatory reason for her discharge was pretextual. In order to meet this burden, Taylor must adduce some evidence from which a factfinder would conclude "(1) that retaliatory animus played a role in the employer's decision making process and (2) that it had a determinative effect on the outcome of that process." *Krouse*, 126 F.3d at 501.

The School District claims that it was prepared to discharge Taylor because she violated school policy and state law by failing to immediately report a student's complaint of sexual harassment. The record establishes that a female student approached Taylor several times beginning in January 2002 to complain about a teacher who was "harassing" her. Taylor told her to talk to the Assistant Principal about being removed from the class, but the student told her he too had made sexual remarks to her and she did not feel comfortable approaching him. Taylor did not report either allegation until the student approached her again several months later. Taylor also allegedly refused to talk to the State Trooper investigating the allegations against the teacher. She claims, however, that she was never approached by any police officer or investigator.

Viewing the evidence in the light most favorable to Taylor, we will assume that the student's initial complaint about the teacher was too vague to amount to an accusation of sexual harassment, and we will credit Taylor's statement that she was never approached by investigators. Even so, by Taylor's own admission, the student told her that the Assistant Principal had made harassing sexual comments to her in January, and she did not report them, in violation of school policy, which requires

investigation of every allegation of sexual harassment. There is no direct or circumstantial evidence that the School District's proffered reason for terminating Taylor was pretextual, or that racial animus was a likely motivating factor. *See Krouse*, 126 F.3d at 500–01. Accordingly, the School District was entitled to summary judgment on Taylor's retaliation claim.

### III.

For the foregoing reasons, we will affirm the District Court's grant of summary judgment in favor of Brandywine School District. In light of our disposition, the School District's motion for summary affirmance is denied as moot.