NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 09-2873

———

HOWARD LEBOFSKY,
                                        Appellant
                    v.

CITY OF PHILADELPHIA

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-06-cv-05106)
District Judge: Honorable J. William Ditter

———

Submitted Under Third Circuit LAR 34.1(a)
September 13, 2010

Before:  SLOVITER, BARRY and SMITH, Circuit Judges

(Filed: September 17, 2010 )

———

OPINION

———

SLOVITER, *Circuit Judge*.

Appellant Howard Lebofsky, an attorney who was formerly employed in the Law Department of the City of Philadelphia, appeals from the District Court's grant of summary judgment for defendant City of Philadelphia ("City" or "Law Department"). After he accepted a higher-paying job with a private law firm, Lebofsky filed a complaint against the City alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, and race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), *as amended*, 42 U.S.C. §§ 2000e, *et. seq.* We will affirm.

## I.

Lebofsky was hired in 1996 at age forty-six as a deputy city solicitor in the special litigation unit, where he focused on defending the City in discrimination and retaliation actions. Within four years he was named the acting chief deputy of the unit.

In February 2000, the mayor appointed Kenneth Trujillo as the new city solicitor. Trujillo merged the labor and employment functions of the special litigation unit into one new department. Lebofsky's position as acting chief deputy solicitor was terminated and a new supervisory position, labor and employment chief deputy solicitor, was created. Despite Lebofsky's professed interest in that position, Trujillo selected Peter Winebrake, a thirty-four-year-old white male, from outside the Law Department. Lebofsky was then fifty years old.

According to Lebofsky, soon after Winebrake was appointed as chief deputy, Winebrake told him that he "wanted to bring on board new, young attorneys to staff the unit." App. at B-689. Lebofsky warned Winebrake that such a comment could be construed as evidence of an intent to engage in illegal age discrimination and could "get the City . . . into trouble here." App. at B-690. Lebofsky then complained of Winebrake's "new, young attorneys" statement to William Thompson, the chief of litigation. A few days after Lebofsky's complaint, Winebrake instructed Lebofsky "to get [his] clients on the phone right now and tell them [he] won't be practicing employment law anymore." App. at B-693. Lebofsky reported the incident to Thompson. Lebofsky also contends that Winebrake then instructed members of the labor and employment unit not to speak with him.

Donna Mouzayck, the person responsible for investigating discrimination complaints within the Law Department, overheard one of the conversations between Thompson and Lebofsky. Mouzayck spoke to Winebrake about his "new, young attorneys" comment and was satisfied that "there was [not] age discrimination going on here at all." App. at B-838. Mouzayck also recalled speaking with at least two other employees about the incident.

Lebofsky was then assigned to a new position, senior attorney functioning as special counsel on litigation matters, which Trujillo characterized as one with "some level of prestige," App. at B-1227, and one "where [Lebofsky] could be successful," App. at B-

3

1229. Lebofsky, by contrast, characterized it as "a dead-end position" and a demotion. Appellant's Br. at 16. His first assignment in this new position was to assist Trujillo in developing a new, affirmative litigation unit. Lebofsky was not assigned to lead this new unit, but instead Trujillo selected Shelley Smith, a thirty-five-year-old African-American woman.

A few months later, in February 2001, Lebofsky advised Mouzayck that he was leaving the Law Department for private practice. Mouzayck proposed a "special portfolio" of high profile matters that Lebofsky could handle in an apparent effort to convince him to stay. App. at B-834. Lebofsky met with Trujillo and Mouzayck and stated that he would stay if the City conducted an investigation into Winebrake's alleged age discrimination and gave him the title of chief deputy. Neither request was granted.

A week later, Lebofsky submitted a resignation memorandum. It set forth no conditions on which he would withdraw his resignation; it did not say that he was leaving because "there was a refusal to do an investigation," App. at B-780, nor did it allege discrimination. Lebofsky thereafter accepted a position at a local law firm, which paid him twenty percent more than he earned at the Law Department.

On September 28, 2001, Lebofsky filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging unlawful race and age discrimination and retaliation. Lebofsky thereafter filed a complaint in the District Court alleging, inter alia, claims under the ADEA and Title VII. The District Court granted

4

summary judgment for the City, concluding that "no reasonable finder of fact could conclude that Lebofsky was subjected to a hostile work environment, constructively discharged, or retaliated against . . . ." *Lebofsky v. City of Phila.*, No. 06-cv-5106, 2009 WL 1507581, at *21 (E.D. Pa. May 29, 2009).

Lebofsky appealed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We review its order under 28 U.S.C. § 1291. Our review is plenary and we apply the same standard as the District Court. *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010).[1]

## III.

A. Lebofsky's Retaliation and Discriminatory Treatment Claims

To establish a prima facie retaliation claim under Title VII, the plaintiff must demonstrate that (1) he engaged in protected activity; (2) after or contemporaneous with that protected activity, he was subject to a materially adverse employment action[2]; and (3)

---

[1] Summary judgment will be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[2] In considering the second element of a prima facie case, the inquiry is whether the alleged retaliation "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d

5

a causal connection existed between the protected activity and the adverse employment action. *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007).

In its memorandum of law supporting summary judgment, the City acknowledged "[Lebofsky's] allegation that he complained" and assumed that he could "establish the first element of his retaliation claim." App. at B-328 n.7. We therefore accept *arguendo* that Lebofsky's complaints constituted protected activity.

Even so, Lebofsky's claim of retaliation fails because the City took no adverse employment action against him within 300 days of his EEOC charge.[3] To pursue an employment discrimination claim under Title VII or the ADEA, an employee must first file a charge with the EEOC within 300 days of an adverse employment action or of notification to the employee of such an action. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(B).[4] Lebofsky filed his charge of discrimination with the EEOC on September 28, 2001. Therefore, to meet the statute of limitations requirement, Lebofsky must show that at least one adverse employment action occurred after December 2, 2000 – 300 days earlier.

---

Cir. 2006) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

[3] For this reason, in addition to the other reasons cited by the District Court, Lebofsky's claims of age discrimination under the ADEA, race discrimination under Title VII, and a hostile work environment also fail.

[4] The parties agree that 300 days is the applicable limitations period in this case.

As the District Court noted, no such action occurred within 300 days of his EEOC charge. Lebofsky contends that his EEOC charge was not untimely "[u]nder the federal discovery rule," Appellant's Br. at 34, because he did not know he was demoted until "after several weeks in the position," Appellant's Br. at 33. That post hoc characterization, however, belies Lebofsky's testimony that he viewed the position as "a demotion" as early as November 30, 2000, App. at B-703, and that he "kn[e]w [he] had to get out" of the Law Department "and that's what [he] tried to do," App. at B-708. He "start[ed] looking for another position . . . [a]lmost immediately after" Shelley Smith was promoted. App. at B-709. Indeed, within days of the announcement of her promotion, Lebofsky applied for new employment elsewhere.

The only allegedly adverse employment action Lebofsky identifies as occurring within the limitations period was during a meeting just prior to his resignation. There, according to Lebofsky, Trujillo "made it absolutely clear that" no investigation would ensue. App. at 780. Lebofsky had "never seen [Trujillo] so angry." App. at 780. The District Court correctly noted that "Mouzayck had already investigated." *Lebofsky*, 2009 WL 1507581, at *12. Indeed, she spoke with several employees, including Winebrake, and was satisfied that no unlawful discrimination had occurred. The evidence that Trujillo was aware of this fact is uncontroverted.

Lebofsky next asserts that we should disregard the 300-day time bar because, "[u]nder the continuing violation theory, a plaintiff may pursue a claim for discriminatory

7

or retaliatory conduct that began prior to the filing period if he can demonstrate that act is part of an ongoing practice o[r] pattern of discrimination . . . ." Appellant's Br. at 35 (citing *West v. Phila. Elec. Co.*, 45 F.3d 744 (3d Cir. 1995)). Although we have found that a filing requirement may be tolled in the context of a Title VII hostile work environment claim, *see West*, 45 F.3d at 754, we have only done so when at least one adverse employment action occurred within the filing period. This is not such a case, as the District Court correctly concluded.

B. Lebofsky's Constructive Discharge Claim

Lebofsky contends that he suffered constructive discharge due to "a persistent pattern of discriminatory and retaliatory treatment." Appellant's Br. at 39. To find constructive discharge, a court "need merely find that the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 888 (3d Cir. 1984). In *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3d Cir. 1993), we identified several factors that may be indicative of constructive discharge: (1) threat of discharge; (2) suggesting or encouraging resignation; (3) a demotion or reduction of pay or benefits; (4) involuntary transfer to a less desirable position; (5) alteration of job responsibilities; and (6) unsatisfactory job evaluations. *Id.*

Turning to these factors, Lebofsky testified that the Law Department threatened him with discharge when he sought out work in his role as senior attorney and Mouzayck

8

told him to "find work to do or . . . be fired." App. at B-714. However, when Lebofsky told Mouzayck that he was leaving the Law Department for private practice, Mouzayck tried to convince him to stay. She proposed a "special portfolio" of matters for him to handle. App. at B-834. There is no basis for a determination that his resignation was suggested or encouraged by the Law Department.

Lebofsky asserts that his transfer to the position of senior attorney was a "*de facto* demotion*,*" Appellant's Br. at 32, because he was "assigned work that was not desirable and was much less significant than what [he] had been doing previously; [he] was being given little to no work to do the majority of the time; and, [he] was denied a secure place in the organization structure." App. at B-344. He complains he was moved into a less desirable office, lost an assigned secretary, and his name was omitted from settlement documents.

The District Court correctly concluded that "no reasonable finder of fact asked to consider the litany of real or perceived slights suffered by Lebofsky, alone or collectively, could conclude that he suffered under conditions that could be objectively described as being so intolerable that he had no [re]course but to quit."[5] *Lebofsky*, 2009 WL 1507581, at *21 (citing *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1083 (3d Cir. 1992)).

---

[5] Our conclusion is buttressed by the facts that Lebofsky remained in his supposedly "intolerable" position for several months without complaint and that he was willing to reconsider his resignation if he were given the title of chief deputy.

9

Accordingly, summary judgment was properly entered against Lebofsky on his constructive discharge claim.

## IV.

For the above stated reasons, we will affirm the District Court's order granting summary judgment in favor of the City.